CHARLES SCHNEIDER y OTRA, demandantes y recurridos, *v.* TROPICAL GAS COMPANY, INC., demandada y recurrente.

*Número:* R-66-70 *Resuelto:* 29 de diciembre de 1967

_____

(¹) La llamada "Resolución" es en verdad a los fines legales una sentencia.

Baragaño, Trías, Saldaña, Harris & Francis, José Ángel Cestero y Roberto Busó Aboy, abogados de la recurrente; Segurola & Romero, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La decisión del presente recurso gira en torno a la interpretación de la Sec. 4 de la Ley Núm. 3 de 13 de marzo de 1942 (Leyes, pág. 285), 29 L.P.R.A. sec. 469, que reza: "El patrono no podrá, sin justa causa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo."

Para un mejor entendimiento de la cuestión a resolver precisa recordar que para la fecha de la aprobación del texto transcrito la legislación vigente consagraba el derecho de los empleados de negocios lucrativos a que no se les despidiese de sus cargos sin justa causa. Al efecto la Ley Núm. 43 de 28 de abril de 1930 (Leyes, pág. 357), disponía que "Todo empleado de industria o de cualquier otro negocio lucrativo, *contratado sin tiempo determinado,* cuyo sueldo fuese convenido por mes, quincena o semana, que fuere destituido de su cargo sin justa causa y sin previo aviso de por lo menos quince días de anticipación, tendrá derecho a recibir de su principal o patrono el sueldo que hubiere de-

vengado y el de un mes, una quincena o una semana adicional, según fuere el caso . . . ." (¹) (Énfasis nuestro.) En cuanto a los mancebos y factores de comercio, el Art. 220 del Código de Comercio les garantizaba para tal caso el sueldo que correspondía a una mesada.

Conforme indicamos en *P.R. Cap and Tires Sales* v. *Tribunal de Distrito*, 68 D.P.R. 398 (1948), el propósito legislativo es el de proteger al empleado en su derecho a continuar en el empleo y a que no se le despida caprichosamente, injustificadamente. El contenido del concepto "justa causa" ha sido objeto de consideración en varias ocasiones. *Wolf* v. *Neckwear Corporation*, 80 D.P.R. 537 (1958) ; *Mercedes Bus Line* v. *Tribunal de Distrito*, 70 D.P.R. 690 (1949) ; *Blanes* v. *Tribunal de Distrito*, 69 D.P.R. 113 (1948) ; *Avilés* v. *Corte*, 69 D.P.R. 1 (1948) ; *P.R. Cap and Tires Sales* v. *Tribunal de Distrito*, supra. No parece que haya existido en momento alguno duda respecto a que la negligencia o la ineficiencia en el desempeño de las labores constituye causa suficiente para el despido. En *Blanes*, supra, a la pág. 120, aludimos a que en todo contrato de empleo existe, expresa o implícita, la condición de que el empleado habrá de cumplir los deberes asignádosle en forma competente, y demostrado que el empleado es incompetente, ineficiente o negligente, en tal forma que el continuar en sus servicios resultaría en perjuicio del patrono y aun de terceras personas, ese hecho constituye justa causa para el despido. (²)

---

(¹) Esta ley fue enmendada por la Núm. 84 de 12 de mayo de 1943 (Leyes, pág. 197), que estableció el derecho a un mes de sueldo en los casos de despido injustificado.

Tanto la Ley Núm. 43 de 1930, según enmendada, como el Art. 220 del Código de Comercio, fueron sustituidos por la Ley Núm. 50 de 20 de abril de 1949 (Leyes, pág. 127), 29 L.P.R.A. secs. 183–185, que en adición a estatuir el derecho a la mesada, invirtió el peso de la prueba para requerir que el patrono alegara afirmativamente en su contestación los hechos que dieron origen al despido y probara que éste estuvo justificado.

(²) Igual criterio prevalece en cuanto a los empleados públicos. La Sec. 31 de la Ley de Personal, 3 L.P.R.A. sec. 671, según enmendada

Consciente de esta interpretación razonable—la procedencia del despido por ineficiencia del empleado—la Asamblea Legislativa deseó sustraer de su aplicación—en el uso de su indiscutible poder de razón de estado (*police power*) para promulgar leyes para la protección de la vida, la salud y la seguridad de las madres obreras—el supuesto de la mujer embarazada que por razón de su condición es afectada en el rendimiento de su trabajo. Al considerar este valor superior envuelto en la situación peculiar de la mujer embarazada, varió la norma en cuanto al contenido del concepto de justa causa. Cf. *Ponce Candy Industries* v. *Corte*, 69 D.P.R. 417 (1948), en donde se sostuvo la constitucionalidad de la Ley Núm. 3 de 1942; véase Nota en 19 Rev. Jur. U.P.R. 33 (1949). Por esos mismos motivos también consagró un período de descanso, con paga, durante cuatro semanas antes y cuatro semanas después del alumbramiento.(³)

_____

por la Ley Núm. 118 de 8 de junio de 1967 (Leyes, pág. 379), prescribe como motivos de destitución, entre otros, los siguientes: "(1) Incapacidad manifiesta, o ineptitud en el desempeño de [las] funciones; (2) Descuido o negligencia en el desempeño de [las] funciones. . . ."

(³) Dice la exposición de motivos de la ley referida:

"La legislación vigente en Puerto Rico no provee protección alguna para las madres obreras. En los convenios colectivos e individuales de trabajo tampoco suele incluirse disposición alguna para garantizar un período de descanso a las madres obreras en las semanas que preceden ni en las que siguen al alumbramiento. Las jornadas ininterrumpidas de trabajo durante este período constituyen un positivo peligro para la salud y la vida de las obreras. La ciencia médica aconseja la observancia de un período de descanso en estos casos. La legislación moderna del trabajo se orienta en el sentido de proveer a las madres obreras este indispensable descanso.

Las obreras puertorriqueñas que trabajan en oficinas, establecimientos comerciales e industriales y en empresas de servicio público necesitan de los beneficios de esta medida humanitaria, que es indispensable para la protección de su salud y la conservación de su vida. Se declara por la presente que la política pública de esta Ley es, mediante el ejercicio de las facultades de la Asamblea Legislativa de Puerto Rico para decretar leyes para la protección de la vida, la salud y la seguridad de empleados y obreros, establecer el derecho de las madres obreras a un descanso que

Ahora bien, parece claro que la norma de compensación varía trátese ya de un contrato de trabajo sin tiempo determinado[4] o ya de un contrato con término fijo. En el primer caso la ley dispone el pago de una cantidad equivalente a una mesada; en el segundo, aplícanse los preceptos del Código Civil que rigen la determinación de los daños por el quebrantamiento de las obligaciones contractuales. Expresamos en *Cassasús* v. *Escambrón Beach Hotel,* 86 D.P.R. 375, 379–380 (1962), que:

"Cuando el contrato de servicios es por tiempo determinado, el incumplimiento por el patrono confiere el derecho a iniciar una acción civil en resarcimiento de los perjuicios ocasionados por el quebrantamiento. *Long Corporation* v. *Tribl. de Distrito,* 72 D.P.R. 788 (1951); véase, artículo 1476 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 4114, que se refiere a los empleados de labranza, menestrales y demás asalariados por término cierto. En los contratos sin tiempo determinado se ha interpuesto la legislación laboral para impedir que al separarse al empleado— que no pueda recurrir a la acción de incumplimiento por no tener término fijo para la prestación de sus servicios—quede en total desamparo económico mientras gestiona y consigue un nuevo empleo."

Con esta exposición del derecho aplicable, veamos los hechos del presente caso. Determinó el tribunal de instancia que la demandante Doris Farinacci de Schneider comenzó

---

comprenderá cuatro semanas antes del alumbramiento y cuatro semanas después."

Protección adicional a las mujeres embarazadas se acuerda por la Sec. 1 de la Ley Núm. 73 de 21 de junio de 1919, según enmendada, 29 L.P.R.A. sec. 457.

[4] Véanse, *Cassasús* v. *Escambrón Beach Hotel,* 86 D.P.R. 375 (1962) y *Wolf* v. *Neckwear Corporation,* 80 D.P.R. 537 (1958).

La Ley Núm. 103 de 6 de junio de 1967 (Leyes, pág. 352), que comenzó a regir a los 90 días de su aprobación, requiere que los contratos probatorios deberán hacerse por escrito haciendo constar las fechas en que comienza y termina el período probatorio. Dispone además que tal período no podrá exceder de 3 meses a menos que el mismo se extienda por el Secretario del Trabajo, pero en ningún caso el término podrá exceder de 6 meses.

a trabajar en agosto de 1962 como secretaria en la empresa demandada Tropical Gas Company, Inc., por un período probatorio de dos meses, con un sueldo de $325 mensuales; que antes de transcurrir este período el patrono tuvo conocimiento que la señora Schneider se encontraba en estado de embarazo; que al expirar el período probatorio fue nombrada empleada permanente con sueldo de $350 mensuales; que "después del período probatorio y según iba avanzando el estado de embarazo de la demandante, su trabajo fue desmereciendo y su rendimiento era cada día menor", lo que dio lugar a que se le llamara la atención por deficiencias, inadvertencias y errores cometidos; que en 31 de diciembre de 1962 la reclamante fue despedida del empleo, y se le pagó, en adición al devengado, el salario de un mes, así como el importe de las vacaciones acumuladas; y que el alumbramiento ocurrió para mediados del mes de junio de 1963, o sea cinco meses y medio después del despido.

A base de estas determinaciones se dictó sentencia condenando a la demandada recurrente a pagarle a la demandante el salario de cuatro meses y medio que debió haber percibido desde el despido hasta cuatro semanas antes del alumbramiento, y desde entonces hasta cuatro semanas después del alumbramiento, a razón de medio sueldo. Se invocaron para ello las secciones 2 (5) y 4 de la Ley Núm. 3 de 1942. Decidimos revisar la sentencia.

---

(5) La Sec. 2, 29 L.P.R.A. sec. 467, lee como sigue:

"Las obreras en estado grávido tendrán derecho a un descanso que comprenderá cuatro semanas antes del alumbramiento y cuatro semanas después. En este período se prohibe en oficinas, establecimientos comerciales e industriales y empresas de servicio público, el trabajo de obreras en estado grávido.

Será obligación del patrono, asimismo, pagar a las madres obreras la mitad del sueldo, salario, jornal o compensación que estuviere recibiendo por su trabajo durante el mencionado período de descanso. Este pago se hará en la misma forma y términos establecidos para el pago de los sueldos, salarios, jornales o compensaciones corrientes; Disponiéndose, que para computar la mitad del sueldo, salario, jornal o compensación se tomará como base única el promedio de sueldo, salario, jornal o com-

 Aparentemente el error en que incurrió el juez a quo debióse a que extendió la protección que intentó dar el legislador para el *descanso* de las madres obreras grávidas al caso de su despido. Son dos derechos separados los que consagra la ley mencionada, que operan en distintas situaciones y con distinto resultado. El derecho al descanso se refiere únicamente a las cuatro semanas anteriores y posteriores al alumbramiento y nada tiene que ver con el despido injustificado. En cuanto a este último hemos visto que la compensación depende del término determinado o indeterminado del contrato de trabajo. Nada hay en los autos que demuestre que la señora Schneider había sido empleada por término fijo, en cuyo caso hubiese sido procedente concederle indemnización hasta el vencimiento del contrato, sino más bien por tiempo indeterminado, lo que le daría derecho a un mes de sueldo únicamente. Obsérvese además que la propia ley en su Sec. 7, 29 L.P.R.A. sec. 472, al tratar sobre la reclamación judicial a que tiene derecho la empleada, se refiere únicamente al "sueldo, salario, jornal o compensación correspondiente a *dicho período de descanso*", o sea al de las ocho semanas. Si sostuviéramos la sentencia en efecto estaríamos resolviendo que la relación del empleo era por un período determinado, o sea, hasta un mes después que la reclamante tuviera el alumbramiento. Una lectura de la exposición de motivos que se transcribe en el escolio 3 demuestra que la Asamblea Legislativa se propuso compensar únicamente el

---

pensación que hubiera estado recibiendo durante los tres meses anteriores al comienzo del período de descanso.

Si el alumbramiento se produjere después de las cuatro semanas siguientes a la fecha en que la obrera hubiere comenzado a gozar del descanso, o si sobreviniere a ésta alguna enfermedad producida directamente por el alumbramiento y que le impidiere trabajar por un término que exceda de cuatro semanas, a contar desde el día del alumbramiento, el patrono estará obligado a ampliar el período de descanso por un término que no excederá de cuatro semanas adicionales siempre que antes de expirar el período de descanso se le presente certificación médica acreditativa de tales hechos. En este caso, la obrera no tendrá compensación adicional, pero se le reservará el empleo."

período de ocho semanas y que lejos estuvo de su intención intervenir en la relación particular de empleo entre las partes para crear una relación contractual artificial. (⁶)

En vista de las anteriores conclusiones el planteamiento de la parte recurrente sobre la inexistencia de una penalidad civil es irrelevante.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 23 de febrero de 1966 y se desestima la demanda.*

El Juez Asociado Señor Belaval disintió en opinión separada en la cual concurren el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

—O—

Opinión disidente del Juez Asociado Señor Belaval con la cual están conformes el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Hernández Matos y Santana Becerra

San Juan, Puerto Rico, a 29 de diciembre de 1967

La ilustrada Sala sentenciadora declaró probados los siguientes hechos: La demandante recurrida, Sra. Doris Farinacci de Schneider empezó a trabajar con la demandada recurrente durante un período probatorio de dos meses, con un salario mensual de trescientos veinticinco dólares y promesa de aumento hasta trescientos cincuenta dólares si la nombraban empleada permanente; antes de vencer el período probatorio, el patrono tuvo conocimiento de que la señora

---

(⁶) Si adoptáramos la interpretación del tribunal de instancia, y consideraramos la aplicación de la Sec. 3 de la ley, 29 L.P.R.A. sec. 468— "Durante el período referido en la sección anterior, el patrono estará obligado, no obstante cualquiera estipulación en contrario, a reservar el empleo a la obrera embarazada"—tendríamos que concluir con la misma lógica que el patrono vendría obligado a pagar a la empleada por un término indefinido.

Schneider estaba en estado de embarazo, pero a pesar de tal conocimiento, se la nombró empleada permanente con un sueldo de trescientos cincuenta dólares; según iba avanzando el estado de embarazo de la demandante, su trabajo fue desmereciendo y su rendimiento era cada día menor, razón por la cual, en repetidas ocasiones los superiores de la demandante reprendieron a ésta por deficiencias, inadvertencias y errores cometidos en su trabajo. El día 31 de diciembre de 1962, la demandada despidió a la demandante haciéndole efectivo el salario de un mes adicional y pagándole además las vacaciones acumuladas hasta esa fecha. La demandante dio a luz allá para mediados del mes de junio de 1963.

Se le aplicó a estos hechos, las Secs. 2 y 4 de la Ley Núm. 3 de 13 de marzo de 1942, según y como fuera enmendada la Sec. 2 por la Ley Núm. 398 de 13 de mayo de 1947, que extractado en sus contenidos pertinentes a la cuestión litigiosa, disponen:

"Sección 2.—Las obreras en estado grávido tendrán derecho a un descanso que comprenderá cuatro semanas antes del alumbramiento y cuatro semanas después. En este período se prohíbe en oficinas, establecimientos comerciales e industriales y empresas de servicio público, el trabajo de obreras en estado grávido.

Será obligación del patrono, asimismo, pagar a las madres obreras la mitad del sueldo, salario, jornal o compensación que estuviere recibiendo por su trabajo durante el mencionado período de descanso . . .

. . . . . . . . .

Sección 4.—El patrono no podrá, sin causa justa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo."

resolviendo la ilustrada Sala sentenciadora, que la demandada recurrente venía obligada a satisfacer a la demandante recurrida de acuerdo con la Sec. 4 de la Ley antes citada el sueldo completo que debió haber percibido desde el tiempo del despido hasta cuatro semanas antes del alum-

bramiento, más las ocho semanas de descanso a mitad de sueldo, de acuerdo con la Sec. 2 de la misma Ley todo lo cual asciende a la suma de $1,925.00.

La demandada recurrente, en su recurso de revisión nos pide revocar la sentencia de la ilustrada Sala de San Juan porque, (1) la Ley Núm. 3 de 13 de marzo de 1942 no establece penalidades ni sanciones de naturaleza civil contra un patrono que despida una empleada embarazada con o sin justa causa; (2) para tener derecho al descanso que establece la Sec. 2 de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada por la Ley Núm. 398 de 13 de mayo de 1947 la empleada embarazada debe estar en funciones de su empleo al momento de comenzar las cuatro semanas anteriores al alumbramiento, o sea, debe existir entre las partes la relación de patrono y empleada en el momento de dar a luz, y en este caso la demandante fue despedida unos cinco meses y medio antes del alumbramiento, por lo cual no tenía derecho a ampararse bajo la ley que protege a las empleadas embarazadas; (3) partiendo del supuesto que la demandante recurrida tuviera derecho a ampararse bajo la referida ley, no existiría fundamento de derecho alguno para condenar a la demandada al pago de los salarios correspondientes a los meses comprendidos entre la fecha del despido y las cuatro semanas anteriores al alumbramiento.

4. Por su parte, la empleada recurrida alega, en contrario, que al admitir la demandada recurrente haber despedido a la empleada recurrida sin justa causa, durante el período de embarazo, violó las disposiciones mandatorias de la Sec. 4 de la Ley Núm. 3 de 13 de marzo de 1942, que protegen a la mujer durante el embarazo, por lo cual, la empleada embarazada tiene derecho a demandar al patrono en una acción de daños y perjuicios, a tenor con el Art. 1802 del Código Civil de Puerto Rico, siendo en tal caso, la medida lógica de los daños, la suma de dinero que hubiera podido

percibir la empleada embarazada de haber continuado en su trabajo durante el embarazo.

1–4. Si bien la Ley Núm. 3 de marzo de 1942 no establece penalidades ni sanciones de naturaleza civil contra un patrono por el despido de una empleada embarazada, con o sin justa causa, la Sec. 4, en cuanto dispone, que el patrono no podrá, sin justa causa, despedir a la mujer embarazada, no estimándose como justa causa el menor rendimiento para el trabajo en razón del embarazo, establece un pacto implícito, de naturaleza pública—*ex re pública facere*—en todo contrato de trabajo de una mujer embarazada que debe ser cumplido por el obligado, y cuyo incumplimiento da derecho a la perjudicada al correspondiente resarcimiento de daños y perjuicios, siendo en tal caso la medida razonable del daño la suma de dinero que hubiera podido percibir la empleada embarazada de haber continuado en su trabajo durante el embarazo.

La penalidad que establece la Sec. 6 de la citada Ley Núm. 3 de 13 de marzo de 1942 es una relación punitiva entre el Estado y el infractor de un delito, mientras que la compensación por daños es una relación conmutativa entre el causante del daño y el perjudicado por incumplimiento de un contrato, intervenido por el Estado, pero siempre de naturaleza privada. No se puede sustituir una penalidad punitiva por un resarcimiento de daños, considerando aisladamente y como flotando en un vacío privado, las disposiciones de una ley especial que en forma alguna revocan, modifican, o alteran un estatuto general de daños. Nuestro sistema civil es uno de Derecho codificado que nos obliga a aplicar toda la legislación correspondiente a una institución de derecho en forma armónica y ordenada y es solamente en aquellos casos en que las disposiciones especiales están en conflicto directo e irreconciliable con las disposiciones generales que deben prevalecer las primeras contra las últimas. Examinadas las disposiciones de la Ley Núm. 3 de 1942 con

el instituto civil de los daños por incumplimiento de una obligación laboral no existe entre ellos conflicto que pueda enervar el efecto jurídico del último en favor de las primeras.

Existen dos protecciones para la empleada embarazada en la Ley Núm. 3 de 13 de marzo de 1942. La primera es una dirigida a lograr que la mujer embarazada pueda continuar en su trabajo durante el embarazo; la segunda está dirigida a establecer un período de descanso para la mujer embarazada en la época crítica del alumbramiento. En caso de que la mujer embarazada sea despedida de su empleo, sin justa causa, el patrono está obligado a satisfacerle su sueldo o jornal completo durante todo el embarazo y medio sueldo o jornal durante el período de descanso.

La sentencia dictada en 23 de febrero de 1966 por la Sala de San Juan del Tribunal Superior de Puerto Rico, en la causa Núm. 63-489 de dicha Sala debe ser confirmada.