EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Betsy Santiago González<br>    Demandante-Recurrida<br><br>                v.<br><br>Oriental Bank & Trust<br>    Demandado-Peticionario | Certiorari<br><br>2002 TSPR 82<br><br>157 DPR _____ |

Número del Caso: CC-1999-610


Fecha: 18/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional IV


Juez Ponente:
                    Hon. Jocelyn López Vilanova


Abogado de la Parte Peticionaria:
                    Lcdo. Fernando E. Agrait Betancourt

Abogados de la Parte Recurrida:

                    Lcdo. Juan Raúl Mari Pesquera
                    Lcdo. Albert Negrón Cruz



Materia: Daños y Perjuicios



        Este documento constituye un documento oficial del Tribunal Supremo
        que está sujeto a los cambios y correcciones del proceso de
        compilación y publicación oficial de las decisiones del Tribunal.
        Su distribución electrónica se hace como un servicio público a la
        comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Betsy Santiago González

    Demandante Recurrida

                            CC-1999-610

      v.

Oriental Bank & Trust

    Demandado Peticionario

**Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN**

San Juan, Puerto Rico, a 18 de junio de 2002

Nos corresponde determinar si el desconocimiento por parte del patrono del estado de embarazo de una empleada al momento de despedirla, constituye una defensa afirmativa en una demanda por despido injustificado presentada por dicha empleada al amparo de la Ley de Madres Obreras, Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. § 467 *et seq* (en adelante Ley de Madres Obreras).

I

La Sra. Betsy Santiago González (en adelante Sra. Santiago o recurrida) se desempeñaba como Oficial de

Cierre del Departamento de Hipotecas del Oriental Bank & Trust, (en adelante Oriental), sucursal de Mayagüez, desde el año 1994 hasta el 31 de marzo de 1998, cuando fue despedida de su empleo.

El 13 de julio de ese mismo año, la Sra. Santiago radicó una demanda por despido injustificado y discriminatorio contra Oriental. Alegó que a principios del mes de marzo de 1998 quedó embarazada, que su patrono la despidió de su empleo el día 31 de ese mes, y que la verdadera razón del despido fue el discrimen por razón de embarazo. Oriental contestó la demanda negando las alegaciones de la Sra. Santiago. Adujo como defensas que medió justa causa para el despido y que al momento de la cesantía, Oriental desconocía la condición de embarazo de la recurrida. En consecuencia, solicitó la desestimación de la demanda.

Posteriormente, Oriental le pagó a la Sra. Santiago la mesada que establece la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. § 185(a) *et seq* (en adelante Ley 80.)[1] Las partes estipularon el hecho de que el patrono desconocía que la demandante estuviera embarazada a la fecha del despido.[2]

Oriental presentó un escrito en apoyo a su solicitud de desestimación; la demandante presentó el correspondiente escrito en oposición. El tribunal de instancia denegó la solicitud de desestimación de Oriental. Determinó que aunque el hecho del desconocimiento del embarazo de la demandante fue estipulado por las partes, dicho desconocimiento no era una defensa afirmativa contra una reclamación bajo la Ley de Madres Obreras.

---

[1] La información referente al pago de la mesada surge del "Memorando de hechos y de derecho" presentado por la demandante ante el tribunal de instancia, Ap. IV, página 29.

[2] El hecho de la estipulación surge de la "Resolución y sentencia parcial" dictada por el tribunal de instancia el 17 de marzo de 1999.

**Inconforme con esta determinación, Oriental recurrió al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), el cual confirmó el dictamen del tribunal de instancia. El foro apelativo concluyó que, a la luz de lo resuelto por este Tribunal en** Soc. de Gananciales **v.** Centro Gráfico**, 144 D.P.R. 952 (1998), la estipulación sobre el desconocimiento del patrono del embarazo de la Sra. Santiago, lejos de eximir de responsabilidad a Oriental, "demostró que la empleada fue despedida mientras estaba embarazada y activó al presunción de que el despido fue injustificado."**

**De este dictamen, el peticionario recurrió ante nos mediante recurso de certiorari. Acordamos revisar y expedimos el auto solicitado. Habiéndose perfeccionado el recurso, procedemos a resolver.**

II

El Art. II § 1 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece expresamente que no podrá establecerse discrimen alguno, entre otras circunstancias, por razón de sexo. En el ámbito obrero-patronal, el discrimen por razón de sexo está prohibido por varias leyes. Entre éstas se encuentra la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. § 147 *et seq*, que prohíbe que se despida, suspenda o discrimine contra un empleado, por razón de sexo, entre otras prohibiciones de discrimen; la Ley Núm. 69 de 6 de julio de 1985, 29 L.P.R.A. § 1321 *et seq*, la cual prohíbe el discrimen por razón de sexo en el empleo; y la Ley Núm. 17 de 22 de abril de 1958, 29 L.P.R.A. § 155 *et seq*, que prohíbe el hostigamiento

sexual en el empleo, y establece específicamente que esta conducta es una forma de discrimen por razón de sexo.

Por su parte, la Ley de Madres Obreras prohíbe específicamente el **discrimen por razón de embarazo**, el cual según hemos reconocido, es una modalidad de discrimen por razón del sexo. Rivera Águila v. K-Mart de P.R., 123 D.P.R. 599, 608 (1989). Esta ley está encaminada a salvaguardar los derechos de las trabajadoras embarazadas de dos maneras distintas: (1) estableciendo periodos de descanso tanto antes como después del alumbramiento, y (2) prohibiendo el despido sin justa causa, y la suspensión, reducción de salario o discrimen de cualquier otra índole contra la obrera debido a la merma en la producción por causa de su estado de gestación. García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193, 199 (1988). Así pues, "son dos [tipos de] derechos separados los que consagra la ley mencionada, que operan en distintas situaciones y con distinto resultado" Schneider v. Tropical Gas Company, Inc., 95 D.P.R. 626, 632 (1967).

En este caso nos concierne la protección contra el despido sin justa causa de una empleada embarazada. A estos efectos, la sec. 4 de la de Ley de Madres Obreras dispone:

> El patrono no podrá, sin justa causa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo. 29 L.P.R.A. § 469. (Énfasis suplido.)

Este Tribunal se ha expresado en varias ocasiones sobre el significado y alcance del concepto "justa causa" bajo la de Ley de Madres Obreras. En Schneider v. Tropical Gas Company, Inc., supra, pág. 629, señalamos que esta ley tuvo el efecto de variar el contenido del concepto de justa causa en la situación particular de la mujer embarazada, al sustraer de dicho concepto el menor rendimiento en el empleo cuando dicho menor rendimiento es consecuencia directa del

estado de embarazo. Este menor rendimiento se refiere no sólo a aquel que se produce en términos cuantitativos, sino al que surge en términos cualitativos.[3] Así pues, bajo esta ley surgen dos (2) protecciones relacionadas al despido de una empleada embarazada: (1) la prohibición del despido sin justa causa, que se refiere al concepto de justa causa bajo las leyes laborales; y (2) la prohibición de despido por merma en la producción como consecuencia del embarazo, lo cual, en el caso de una mujer en estado de gestación, no constituye justa causa para el despido.[4]

Por otra parte, en Rivera Águila v. K-mart de P.R., supra, explicamos que a diferencia de la Ley 100, donde la reclamación por discrimen puede no proceder si, a pesar de no existir justa causa para el despido, el patrono prueba que el despido injustificado no fue discriminatorio, bajo la Ley de Madres Obreras el patrono responde en daños si despide sin justa causa a una mujer embarazada, aunque el patrono logre probar que el despido no fue por razón de embarazo. Así pues, cuando una empleada reclama y prueba que fue despedida de su empleo sin justa causa mientras estaba embarazada, el patrono responderá al amparo de la Ley de Madres Obreras, a menos que logre establecer que el despido estuvo justificado. Véase Rivera Águila, supra.

Ahora bien, en Soc. de Gananciales v. Centro Gráfico, supra, tuvimos la oportunidad de aclarar la carga probatoria de un patrono al defenderse de una reclamación bajo la Ley de Madres Obreras. Allí

---

[3] Ruy. N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo, San Juan, Ed. 1989, pág. 180.

[4] Cabe señalar que según el Reglamento Departamento del Trabajo y Recursos Humanos para Administrar la Ley 3 de 13 de marzo de 1942, Reglamento Núm. 3292 de 11 de marzo de 1986, el menor rendimiento de la obrera no será justa causa para el despido, y tampoco será justa

establecimos que lo determinante en estos casos no es si el despido fue motivado por la condición de embarazo de la demandante; sino si estando embarazada la demandante, el patrono la despidió por causa injustificada.

De acuerdo con estas expresiones, la recurrida alega que, habiéndose establecido que ésta fue despedida cuando estaba en estado de embarazo, y que el despido fue sin justa causa, tiene derecho a los beneficios de la Ley de Madres Obreras, resultando irrelevante el que el patrono no conociera de su estado de embarazo al momento del despido. No le asiste la razón.

Consideramos que de acuerdo a la naturaleza y propósitos de la Ley de Madres Obreras, el desconocimiento por parte del patrono del estado de embarazo de la empleada despedida constituye una defensa afirmativa frente a una reclamación en su contra bajo esta ley. Veamos.

III

Se desprende de la exposición de motivos de la Ley de Madres Obreras que el propósito de esta legislación es proteger la salud y la vida de las mujeres **en estado de embarazo.** Es por esta razón que la ley original enfocaba principalmente la reglamentación de periodos de descanso mandatorios para las mujeres embarazadas, durante los cuales la empleada no podía ser ni despedida ni penalizada por su patrono.

**Posteriormente, en <u>Schneider</u> v <u>Tropical Gas Company, Inc.</u>, <u>supra</u>, resolvimos que el único remedio económico que tenía la mujer**

---

causa el que la obrera no pueda aumentar su rendimiento a consecuencia del embarazo.

embarazada que era despedida de su empleo por razón de una merma en la producción, era la mesada provista por la Ley de Despido Injustificado vigente en aquel entonces. La legislatura consideró que este remedio era inadecuado e insuficiente.[5] Para remediar esta situación se aprobó la Ley Núm. 39 de 19 de junio de 1969, la cual enmendó la Ley de Madres Obreras para que la empleada embarazada que fuera despedida injustificadamente tuviera un remedio económico mayor que el que proveía la Ley de Despido Injustificado entonces vigente y que ahora provee la actual Ley 80, supra.

Como resultado de la aprobación de la Ley 39, se adicionó el inciso(a) a la sec. 4 de la Ley de Madres Obreras, 29 L.P.R.A. § 469(a), mediante el cual se creó una causa de acción en daños y perjuicios contra el patrono que despida a la mujer embarazada en violación a las disposiciones de esta ley. En virtud de dicha enmienda, la sec. 4 de la Ley de Madres Obreras dispone actualmente lo siguiente:

> El patrono no podrá, sin justa causa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, [por] razón del embarazo.
>
> (a) Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de su merma en su producción mientras ésta se encuentra en estado de embarazo o rehúse a restituirla en su trabajo luego del alumbramiento, incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños que cualquiera de los actos antes mencionados haya causado a la trabajadora, o por una suma no menor de mil dólares ($1000.00) ni mayor de cinco mil dólares ($5,000.00) a discreción del tribunal si no se pudieran determinar daños pecuniarios, o el doble de éstos si montaran a una suma menor de mil dólares.($1000.00).
>
> La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños

---

[5]    Véase P. del Senado Núm. 14, Ley Núm. 39 de 19 de junio de 1969, Informe de la Comisión de Trabajo y Fomento Cooperativo, pág. 2.

adicionales idénticos o iguales a los establecidos en esta sec. 29 L.P.R.A. § 469.[6]

Como se puede apreciar, las sanciones económicas que establece esta sección en casos de despido injustificado de una mujer embarazada son sustancialmente mayores a las que provee la Ley 80. Aunque en la redacción de esta sec. 4(a) se hace referencia a las situaciones de despido por merma en la producción y a la negativa del patrono a reponer a la madre obrera en su empleo, no cabe duda que las sanciones civiles allí dispuestas también son de aplicación a las acciones por despido injustificado de la obrera embarazada por causas no relacionadas con la merma en la producción. Un análisis integral de la Ley de Madres Obreras y su jurisprudencia interpretativa nos lleva a esta conclusión. La intención legislativa de las varias enmiendas que ha tenido esta ley también avalan dicho criterio. Ejemplo de esto es la Exposición de Motivos de la Ley Núm. 188 de 26 de diciembre de 1997, en la cual se indica que "La sec. 4 de la Ley Núm. 3 [Madres Obreras] establece que el patrono no podrá, sin justa causa, despedir a la mujer embarazada. Por tal razón, <u>todo patrono que despida o discrimine en cualquier forma contra una mujer trabajadora, por causa de su embarazo, incurrirá en responsabilidad civil por una suma igual al importe de los daños causados a la trabajadora, o por una suma no menor de cien (100) dólares ni mayor de mil (1,000)</u> ..." Como se puede apreciar, la legislatura no pretendió limitar en forma alguna las sanciones civiles bajo la Ley de Madres Obreras a los casos de merma en la producción o negativa del patrono a reponer a la obrera en su empleo.

---

[6]    Cabe señalar que la Ley Núm. 39, <u>supra</u>, establecía una responsabilidad civil bajo esta sección de $100 a $1,000. La Ley Núm. 54 de 10 de marzo de 2000 aumentó estas sanciones a $1000 y $5000, y además, extendió la protección de la ley a las madres obreras adoptantes.

De lo anteriormente expuesto surge con meridiana claridad que la enmienda a la sec. 4 de la Ley de Madres Obreras tuvo el propósito de imponer al patrono que despide a una mujer embarazada sin justa causa, una responsabilidad económica mayor a la que normalmente tendría en una acción ordinaria por despido injustificado.[7]

La razón de ser de esta mayor responsabilidad se encuentra precisamente en el hecho de que la obrera en estado de gestación confronta una situación más difícil ante el desempleo que una persona que no está embarazada. La indiferencia que manifiesta el patrono al despedir sin justa causa y arbitrariamente a una mujer embarazada, sin considerar la situación particularmente vulnerable de ésta, tanto en el aspecto físico, social, como el económico, es la justificación y razón de ser para que la responsabilidad civil que impone la Ley de Madres Obreras en casos de despido injustificado sea mucho mayor que la que impone la Ley 80. De esta forma, la ley actúa como mecanismo para disuadir este tipo de acción por parte del patrono.

Por tanto, si bien hemos establecido que el despido no tiene que ser discriminatorio por razón de embarazo para que la Ley de Madres Obreras sea de aplicación, sostener que bajo dicho estatuto es irrelevante que el patrono conozca o no del embarazo equivaldría a eliminar el eje central de dicho estatuto: el disuadir la conducta voluntaria nociva de los patronos contra las mujeres embarazadas, disponiendo severas sanciones económicas contra aquellos patronos

---

[7] El remedio por despido injustificado bajo la Ley 80 es "(a) el sueldo correspondiente a un mes por concepto de indemnización; si el despido ocurriere dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a dos (2) meses si el despido ocurre luego de los cinco (5) años de servicio hasta los quince (15) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los quince (15) años de servicio; (b) una indemnización progresiva

que a sabiendas subvierten la política pública laboral esbozada en la Ley de Madres Obreras.

La conducta reprobable bajo esta legislación es precisamente **que el patrono**, teniendo conocimiento del embarazo de la obrera, tome la decisión de despedirla sin que medie una causa justificada para ello. Es el conocimiento del embarazo por parte del patrono lo que establece la culpa de éste, agrava la acción de despido sin justa causa, y justifica que se le impongan con todo su rigor las sanciones económicas que establece la Ley de Madres Obreras. **Por lo tanto, el desconocimiento por parte del patrono del estado de embarazo de una empleada es una defensa afirmativa frente a una acción bajo la Ley de Madres Obreras por despido injustificado de una empleada embarazada.**

Esta conclusión no está en contra de lo resuelto por este Tribunal en Soc. de Gananciales, supra. **Aunque allí expresamos que lo determinante en estas acciones era que estando embarazada la demandante se le haya despedido sin justa causa, en ese caso el conocimiento del embarazo por parte del patrono no estaba en controversia.[8] Además, dichos pronunciamientos los hicimos en el contexto de una apreciación errónea de la carga probatoria del patrono en reclamaciones bajo esta ley. En dicho caso discutimos sobre la necesidad de establecer que el despido fue justificado, no si éste fue o no discriminatorio. Nada dispusimos en Soc. de Gananciales sobre cuál sería el efecto de una alegación por parte**

---

adicional equivalente a una semana por cada año de servicio." 29 L.P.R.A. § 185a.

[8] Aunque en Soc. de Gananciales hubo originalmente una alegación en el foro de instancia de que el patrono desconocía del embarazo de la obrera al momento del despido, no hubo controversia a esos extremos en las etapas posteriores del caso, ni el planteamiento fue hecho ante nos

del patrono, <u>como defensa afirmativa</u>, de que desconocía del estado de embarazo de la empleada al despedirla.

Hoy resolvemos que si el patrono alega que desconocía del estado de embarazo de la empleada al momento del despido, dicha alegación constituye una defensa afirmativa en casos bajo la Ley de Madres Obreras donde se alegue el despido sin justa causa de una empleada embarazada. Es el conocimiento por parte del patrono del estado de embarazo de la empleada al momento de efectuar el despido injustificado lo que justifica las sustanciales sanciones económicas que establece la ley.[9]

Lo que hoy determinamos no está en contra de nuestros pronunciamientos anteriores. Siempre se presumirá que el despido de una empleada embarazada, al igual que el de cualquier empleado, fue sin justa causa. Le corresponde al patrono establecer que el despido fue uno justificado. Lo único que estamos resolviendo es que el desconocimiento del embarazo de una empleada al momento del despido es una defensa afirmativa en estos casos, no para establecer si el despido fue justificado o no, sino para evitar las aplicación de las severas sanciones que establece la Ley de Madres Obreras. Si el patrono desconocía del hecho del embarazo, la ley aplicable es la de despido injustificado, Ley 80, mientras que si lo sabía, la ley aplicable es la de Madres Obreras. Las diferencias entre las sanciones económicas de una y otra ley son sustanciales.

Siendo el desconocimiento del embarazo una defensa afirmativa, le corresponderá al patrono el peso de la prueba para establecer que

---

[9] Cabe señalar que se encuentra ante la consideración de la legislatura el Proyecto de la Cámara 1750, radicado el 16 de octubre de 2001. Este proyecto propone un enmienda a la Ley de Madres Obreras para disponer que será responsabilidad de toda madre obrera el informarle a su patrono su condición de embarazo o de su intención de

efectivamente desconocía del embarazo. En caso de que el patrono presente evidencia para establecer dicho desconocimiento, la obrera despedida tendrá la oportunidad de rebatir esa prueba, mediante evidencia directa o circunstancial que demuestre que el patrono sí conocía del hecho del embarazo, o que dicho conocimiento le era imputable.

Si el tribunal determina que el patrono tenía conocimiento del embarazo o que dicho conocimiento le era imputable, éste aun podría prevalecer si demuestra, según ya hemos expuesto, que el despido fue uno justificado. Si no logra establecer estas defensas, estará sujeto a las sanciones civiles que provee la Ley de Madres Obreras. Por otra parte, si el tribunal determina que el patrono no conocía el hecho del embarazo al momento del despido, éste todavía tendría que probar que el despido estuvo justificado si desea derrotar la reclamación por despido injustificado bajo la Ley 80.

Resumiendo: La diferencia entre las dos situaciones previamente discutidas es que de establecerse que el patrono desconocía del embarazo, pero que el despido fue injustificado, el patrono no estará sujeto a las severas sanciones civiles que establece la Ley de Madres Obreras, no obstante, tendrá que cumplir con lo dispuesto en la Ley 80 como compensación en casos de despido sin justa causa.

De igual forma ocurrirá cuando se alegue un despido por merma en la producción de la obrera en estado de embarazo. En estos casos, si el patrono despide a la empleada por baja producción, y a sabiendas de que la empleada despedida estaba embarazada al momento del despido, ésta tendrá una acción por despido injustificado bajo la Ley de Madres Obreras, ya que la merma en la producción no es justa

---

adoptar, dentro del término de dos (2) semanas a partir de que advenga en conocimiento del embarazo o inicio del proceso de adopción.

causa para el despido de una mujer embarazada. **Esto es contrario a lo que sucede en demás casos en los cuales sí existe justa causa para el despido si el empleado no rinde la cantidad y calidad del trabajo que de éste se espera, mientras que un despido por merma en la producción relacionada con el estado de embarazo de la empleada siempre se considerará injustificado bajo la Ley de Madres Obreras. No obstante, si el patrono logra establecer que <u>desconocía del hecho del embarazo al momento de despedir a la empleada por merma en su producción</u>, el remedio disponible para la empleada no será el establecido por la Ley de Madres Obreras, sino la mesada que para casos por despido injustificado establece la Ley 80.**

**Con este trasfondo fáctico y normativo, analicemos el caso de marras.**

**IV**

**En este caso, la recurrida, Sra. Santiago, alegó que fue despedida sin justa causa, y que a la fecha del despido, estaba embarazada. Alegó además, que la razón para el despido fue su estado de embarazo el cual pudo haber afectado "la calidad o cantidad de trabajo o producción de la empleada en su último mes de empleo." Con estas alegaciones, la recurrida activó la presunción de que hubo un despido injustificado.**

**Por su parte, el patrono admitió en su contestación que la Sra. Santiago fue despedida por baja producción. Adujo como defensas afirmativas que el despido fue por causa justificada debido a "problemas de trabajo y actitud anteriores al embarazo," y que desconocía del estado de embarazo al momento del despido, por lo que no procedía la reclamación bajo la Ley de Madres Obreras. El**

desconocimiento por parte del patrono del estado de embarazo de la Sra. Santiago fue estipulado por las partes. Además, Oriental le pagó a la Sra. Santiago la mesada que establece la Ley 80.

De acuerdo con estos hechos y alegaciones, la Sra. Santiago no tiene derecho a ser compensada bajo las disposiciones de la sec. 4(a) de la Ley de Madres Obreras. Habiéndose estipulado que Oriental desconocía del estado de embarazo de la recurrida al momento del despido, ésta solo tiene derecho a la mesada que para acciones por despido injustificado dispone la Ley 80. Dicha compensación ya le fue concedida a la Sra. Santiago.

Por todos estos fundamentos, procede revocar tanto el dictamen del tribunal de instancia como el del Tribunal de Circuito de Apelaciones. En consecuencia, se desestima la causa de acción bajo la Ley de Madres Obreras.


Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Betsy Santiago González

    Demandante Recurrida

                                    CC-1999-610
        v.


Oriental Bank & Trust

    Demandado Peticionario


                        SENTENCIA


San Juan, Puerto Rico, a 18 de junio de 2002


    Por los fundamentos expuestos en la Opinión que antecede, se revoca tanto el dictamen del tribunal de instancia como el del Tribunal de Circuito de Apelaciones. En consecuencia, se desestima la causa de acción bajo la Ley de Madres Obreras.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Asociado señor Hernández Denton disiente con opinión escrita. El Juez Asociado señor Rebollo López está inhibido.


                        Patricia Otón Olivieri
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Betsy Santiago González

    Demandante-Recurrida

    v.                      CC-1999-610      Certiorari

Oriental Bank & Trust

    Demandada-Peticionaria

Opinión disidente emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 18 de junio de 2002.

> "*Basta, sin embargo, echar una ojeada a las prácticas de los estados y las sociedades contemporáneas para percatarse, por otro lado, que el principio de igualdad ante la ley no ha agotado sus posibilidades como instrumento 'liberador'.*" Efrén Rivera Ramos, LA IGUALDAD: UNA VISIÓN PLURAL, 69 Rev. Jur. U.P.R. 1.

Nos vemos precisados a disentir en el presente caso por entender que la Opinión del Tribunal altera el esquema legislativo de la Ley para la Protección de Madres Obreras [10] y descompone la normativa jurisprudencial que interpreta dicha ley, y que tan esmeradamente hemos particularizado para los casos de despido injustificado de una mujer embarazada.

En este caso debemos determinar si la Ley para la Protección de Madres Obreras, *supra*, aplica a casos de despido injustificados de

---

[10] Ley Núm. 3 de 13 de marzo de 1942, 29 L.P.R.A. sec. 467 *et seq.*

mujeres embarazadas cuando el patrono demuestra que desconocía el hecho del embarazo. Según la Opinión del Tribunal, la contestación es en la negativa. Sin embargo, no podemos estar de acuerdo con dicho resultado. Tanto el texto de la Ley para la Protección de Madres Obreras, *supra*, como su desarrollo legislativo demuestran que el factor cardinal de dicho estatuto es el hecho del embarazo y no el conocimiento de éste por parte del patrono. Asimismo, es evidente que su propósito es proteger a las mujeres trabajadoras y no sancionar a los patronos. Veamos.

## I.

La Ley para la Protección de Madres Obreras disponía en su texto original, según aprobado en 1942, lo siguiente:

> **El patrono no podrá, sin justa causa, despedir a la mujer embarazada.** No se entenderá que es justa causa el menor rendimiento para el trabajo, [por] razón del embarazo. Art. 4 de la Ley para la Protección de Madres Obreras, 29 L.P.R.A. sec. 469.

Al interpretar la referida disposición, en <u>Schneider v. Tropical Gas</u>, 95 D.P.R. 626 (1967), resolvimos que una obrera embarazada contratada por un periodo de tiempo indeterminado que es despedida sin justa, no tiene remedio alguno al amparo de la Ley para la Protección de Madres Obreras, *supra*. En ese caso, la obrera sólo tenía derecho a la mesada establecida bajo la ley de despido injustificado vigente en ese entonces. El remedio que reconocía la Ley para la Protección de Madres Obreras, *supra*, se limitaba a una compensación económica durante el periodo de descanso. Véase Ruy N. Delgado Zayas, <u>Apuntes para el Estudio de La Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño</u>, 1996, San Juan, págs. 173-74.

Con el propósito de remediar esta situación y ampliar la protección que ofrecía la ley, se enmendó la misma en 1969 mediante

la Ley Núm. 39 de 19 de junio. Delgado Zayas, *supra*. En esa ocasión se añadió el inciso (a) al Art. 4, el cual dispone:

> (a) Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento o adopción de un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o cualquier jurisdicción de los Estados Unidos de América, incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños causados a la trabajadora, o por una suma no menor de mil (1,000) dólares ni mayor de cinco mil (5,000) dólares a discreción del tribunal si no se pudieran determinar daños pecuniarios o el doble de éstos, si montaran a una suma menor de mil (1,000) dólares.

> La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta sección. 20 L.P.R.A. sec. 469.

Durante el trámite legislativo de esta enmienda, el Legislador, citando el caso de Schneider v. Tropical Gas, *supra*, expresó que "[a]ctualmente, la ley prohíbe el despido injustificado de una obrera embarazada y establece que el menor rendimiento de ésta, en razón del embarazo, no es justa causa. Según fuera interpretada esa disposición por el Tribunal Supremo de Puerto Rico en el caso de Schneider v. Tropical Gas [...] la ley no le da derecho a la mujer embarazada a reclamar daños contra el patrono que la despide en razón de su menor rendimiento. **Esto quiere decir que el único remedio que tiene actualmente la obrera es una acción por despido injustificado, la cual ciertamente no es remedio adecuado y suficiente. Por la acción por despido el patrono sólo tiene que pagar un mes de sueldo que es lo mismo que tiene que pagar por el descanso de ocho semanas a medio sueldo y tendría entonces el patrono la ventaja económica que le produciría otra empleada que no esté en estado de embarazo**". (Énfasis suplido). Informe de la Comisión de Trabajo y Fomento Cooperativo del Senado sobre el P. del S. 14 de 1 de abril de 1969, pág. 3.

Es evidente que esta enmienda a la ley tuvo el propósito de disponer que en todo caso de despido sin justa causa de una mujer embarazada, la ley aplicable sería la Ley para la Protección de Madres Obreras, *supra*, y no la Ley de Despido Injustificado, hoy Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a *et seq.* (en adelante "Ley de Despido Injustificado"). Esto, en vista del remedio inadecuado e insuficiente que ofrecía ésta última y de las graves consecuencias económicas que trae consigo el despido de una futura madre.

Según lo resuelto en Schneider, *supra*, la Ley para la Protección de Madres Obreras, *supra*, no proveía remedio alguno para las mujeres embarazadas que fueran despedidas sin justa causa. Delgado Zayas, *supra*, a la pág. 174. El remedio que ofrecía dicho estatuto se limitaba a una compensación económica durante el periodo de descanso antes y después del alumbramiento. **Es en vista de ello que se enmienda para disponer que en ausencia de justa causa, el despido de una mujer embarazada constituye una infracción a la Ley para la Protección de Madres Obreras, *supra*, y no un mero caso de despido injustificado.**[11] En otras palabras, en casos de despidos de mujeres embarazadas, sólo la presencia de justa causa libera al patrono de responder bajo la Ley para la Protección de Madres Obreras, *supra*. Esa fue la intención legislativa. *Véase además*, Soc. de Gananciales v. Centro Gráfico, 144 D.P.R. 952 (1998).

No obstante lo anterior, la Opinión del Tribunal sostiene que la Ley para la Protección de Madres Obreras, *supra*, no aplica a casos de despido injustificados de mujeres embarazadas si el patrono demuestra

---

[11] En la nota al calce número 7 de Rivera Águila v. K-Mart de P.R., 123 D.P.R. 599 aclaramos que "[e]n *Schneider v. Tropical Gas Company, Inc.*,..., resolvimos que al amparo de la Ley Núm. 3, *supra*, la mujer obrera embarazada despedida injustificadamente sólo tenía derecho a la mesada... En 1969,..., la Asamblea Legislativa enmendó la Sec. 4

que desconocía el hecho del embarazo. Esta apreciación de la ley tiene el efecto de recrear la situación que el Legislador trató de evitar con la enmienda de 1969. Es decir, según la Opinión del Tribunal, existen casos de mujeres embarazadas despedidas sin justa causa que no recibirán protección al amparo de la Ley para la Protección de Madres Obreras, *supra*, sino que deberán conformarse con el "remedio inadecuado e insuficiente" de la Ley de Despido Injustificado, *supra*.

Nos parece que el resultado al que se llega responde, primero, a que se enfoca el esquema legislativo de la Ley para la protección de Madres Obreras, *supra*, como uno que se refiere a conducta discriminatoria exclusivamente, lo cual no es correcto. Segundo, porque confunde el propósito de dicha legislación de proteger a la mujer trabajadora con el de sancionar al patrono.

Nuestra posición no sólo encuentra fundamento en el desarrollo del texto de la ley y en su historial legislativo, sino también en la jurisprudencia de este Tribunal. En <u>Rivera Águila v. K-Mart de P.R.</u>, *supra*, resolvimos que mediante el Art. 4 de la Ley para la Protección de Madres Obreras, *supra*, se colocó a la mujer embarazada en una clasificación especial distinta a los demás empleados. No sólo se prohibió el despido de su empleo sin justa causa de una mujer embarazada, sino que también excluyó del concepto de justa causa el menor rendimiento por razón del embarazo. **"Mediante [La Ley para Protección de Madres Obreras, *supra*,] se proveyó una protección mayor que la que ofrece la [Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 (en adelante "Ley Núm. 100")]. En una acción entablada bajo la [Ley para la Protección de Madres Obreras, *supra*,] el patrono responde en daños si despide, sin justa causa, a**

---

de la [Ley para la Protección de madres Obreras, *supra*,] para permitirle a la obrera así despedida reclamar compensación por daños.

una mujer embarazada. De otra parte, una reclamación bajo la Ley Núm. 100, *supra*, podría no proceder si, a pesar de no existir justa causa para el despido, el patrono prueba que éste no fue discriminatorio. *Ibáñez v. Molinos de P.R., Inc., 114 D.P.R. 42, 53 (1983); Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485, 502-503 (1985).*" (Énfasis suplido). Rivera Águila v. K-Mart de P.R., *supra*, a las págs. 609-610; *véase además*, Soc. de Gananciales v. Centro Gráfico, *supra*.

Una vez entablada una acción por la empleada al amparo de la Ley para la Protección de Madres Obreras, *supra*, mediante la cual reclamó resarcimiento por haber sido despedida de su empleo sin justa causa mientras estaba embarazada, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido. Es al patrono a quien le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. El peso de la prueba se desplaza de la parte demandante recurrente hacia el demandado recurrido, y es sobre éste que recae el *onus probandi*. Soc. de Gananciales v. Centro Gráfico, *supra*; Rivera Águila v. K-Mart de P.R., *supra*. "En reclamaciones al amparo de la [Ley para la Protección de Madres Obreras, *supra*,] surge, pues, una **presunción de despido injustificado** que el patrono viene obligado a rebatir." (Énfasis suplido). Id. **"Es al patrono al que le corresponde persuadir al juzgador de la no-existencia del hecho presumido: el despido injustificado**. *Hawayek v. A.F.F., 123 D.P.R. 526 (1989).*" (Énfasis suplido). Id.

**"El requisito esencial para la aplicación de la [Ley para la Protección de Madres Obreras, *supra*] es que la mujer haya sido despedida durante su embarazo; ante ese hecho, le corresponde a la parte demandada el peso de probar que había justa causa, según la ley define ese concepto, para terminar la relación obrero-patronal."** (Énfasis suplido). Soc. de Gananciales v. Centro Gráfico, *supra*. **"La cuestión**

**que ha de ser resuelta no es si el despido fue motivado por la condición de embarazo de la demandante; la cuestión es si, estando embarazada la demandante, el patrono la despidió por causa justificada."** (Énfasis suplido). Id.

De lo anterior se desprende diáfanamente que no es necesario que el despido sea discriminatorio o por razón del embarazo para que el patrono responda bajo la Ley para la Protección de Madres Obreras, *supra*. Es suficiente con el hecho de que la mujer esté embarazada al momento del despido y no exista justa causa para ello. Por lo tanto, es forzoso concluir que si la causa de acción no se fundamenta en una alegación de discrimen por razón de embarazo, sino despido sin justa causa de una mujer embarazada, es impertinente si el patrono conocía o no el estado de preñez de la obrera despedida.

Lo anterior se evidencia además, a través del propio texto del Art. 4 de la Ley para la Protección de Madres Obreras, *supra*, según enmendado en 1969. Nótese que dicho artículo prohíbe varias conductas en ausencia de justa causa; a saber: (i) despido; (ii) suspensión; (iii) reducción del salario; (iv) o discriminen en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o (v) que el patrono rehúse restituir a la trabajadora luego del alumbramiento o adopción de un menor. Por consiguiente, el despido de una obrera embarazada no tiene que ser por razón de su embarazo o discriminatorio para que ésta esté protegida por la Ley para la Protección de Madres Obreras, *supra*.

Como podrá observarse, la Ley para la protección de Madres Obreras, supra, no se limita a prohibir el discrimen por razón de embarazo, sino que abarca otras decisiones adversas a la obrera embarazada cuando no se fundamentan en justa causa. En vista de lo anterior, el patrono no puede escapar de su responsabilidad bajo la

Ley para la Protección de Madres Obreras, *supra*, aún cuando pruebe que desconocía el estado de preñez de la obrera, porque el asunto crucial es el hecho del embarazo y la ausencia de justa causa para su despido. Es decir, si se despide a una trabajadora sin justa causa, aplica la Ley de Despido Injustificado, *supra*. Ahora, si se despide a una mujer embarazada sin justa causa, aplica la Ley para la Protección de Madres Obreras, *supra*, independientemente de si el patrono conocía o no el estado de preñez de la obrera despedida.

Si este Tribunal quiere ahora alterar la norma anterior, debe así expresarlo. Lo que es impermisible es que se esté modificando el esquema legal de la reclamación bajo el referido estatuto para asemejarlo al de la Ley Núm. 100, *supra*.[12] Nótese, sin embargo, que el hecho presumido bajo la Ley para la Protección de Madres Obreras, *supra*, es **que el despido fue injustificado**, no que fue discriminatorio como ocurre bajo la Ley Núm. 100, *supra*.

¿Cuál es la utilidad de la presunción de despido injustificado que establece la Ley para la Protección de madres Obreras, *supra*, cuando el patrono demuestre que desconocía del embarazo de la obrera que despidió sin justa causa? Obviamente, el desconocimiento del embarazo por parte del patrono no rebate la presunción de despido injustificado. No obstante, y a pesar de no haber rebatido el hecho presumido, la

---

[12] Al amparo de la Ley Núm. 100, *supra*, la una vez se establece la presunción de discrimen, el patrono que decide defenderse puede presentar prueba que rebata la presunción de discrimen; o presentar prueba de que el despido fue justificado; **o que a pesar de haber habido un despido injustificado no fue discriminatorio**. (Énfasis suplido). Diaz Fontanez v. Wyndham Hotel Corp., res. El 24 de octubre de 2001, 2001 T.S.P.R. 141. **Si luego de presentada la totalidad de la evidencia queda demostrado que la razón para el despido no fue discriminatoria, pero el patrono demandado no logra establecer que hubo una causa justificada para despedir al empleado, el tribunal deberá concluir que el despido fue uno injustificado. Bajo estas circunstancias, el empleado demandante sólo será acreedor de los remedios provistos por la Ley de Despido Injustificado, *supra*.** (Énfasis suplido). Belk v. Martínez, 146 D.P.R. 215 (1998).

Opinión del Tribunal concluye que el patrono responderá por la mesada que dispone la Ley de Despido Injustificado, *supra*, y no bajo la Ley para la Protección de Madres Obreras, *supra*. A la luz de lo anterior debemos concluir que dicha presunción ha perdido su utilidad.

De otra parte, nada en el historial legislativo o en el texto de la ley nos llevan a concluir que "[e]s el conocimiento del embarazo por parte del patrono lo que establece la culpa de éste, agrava la acción del despido sin justa causa, y justifica que se impongan con todo su rigor las sanciones económicas que establece la [Ley para la Protección de Madres Obreras]", según concluye la Opinión Mayoritaria. Por el contrario, es evidente que el propósito fue proteger a las obreras en estado de embarazo que son despedidas sin justa causa, con el fin de atenuar las graves consecuencias económicas que conlleva el quedarse desempleada precisamente cuando se está en espera de un nuevo miembro de la familia. Fue fundamental para el proceso legislativo el hecho de que el remedio que provee la Ley de Despido Injustificado, *supra*, es insuficiente e inadecuado para casos de despidos sin justa causa de una mujer embarazada.

Conforme a lo anterior, disentimos de la Opinión del Tribunal que determina que en este caso la obrera embarazada despedida sin justa causa no está protegida por la Ley para la Protección de Madres Obreras, *supra*. Por lo tanto, confirmaríamos la determinación del Tribunal de Instancia y del Tribunal de Circuito de Apelaciones de que el desconocimiento del embarazo de la demandante no es una defensa contra una reclamación bajo la Ley para la Protección de Madres Obreras, *supra*, y devolveríamos los autos para la continuación de los procedimientos.


Federico Hernández Denton
Juez Asociado