EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Neyda Martínez Mora <br>   Recurrida <br><br>       v. <br><br> Acana Corporation H/N/C Real Estate <br>   Peticionaria | Certiorari <br><br> 2002 TSPR 110 <br><br> 157 DPR \_\_\_\_ |

Número del Caso: CC-1998-0583


Fecha: 23 de agosto de 2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon.Roberto L. Córdova Arone

Abogados de la Parte Peticionaria:
                    Lcdo. José M. Acevedo Alvarez
                    Lcdo. Gaspar Martínez Mangual
                    Lcdo. Miguel A. Maza
                    Lcda. Yolanda V. Toyos Olascoaga

Abogado de la Parte Recurrida:
                    Lcdo. José A. Lebrón Tirado

Materia: Discrimen por Embarazo, Despido Injustificado y
        Reclamación de Salarios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Neyda Martínez Mora

    Recurrida

       v.

                       CC-1998-583

Acana Corporation H/N/C

Acana Real Estate

    Peticionario

Opinión de Conformidad emitida por la Juez Asociada señora Naveira de Rodón a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 23 de agosto de 2002

       Aunque estamos conformes con la sentencia que hoy emite la mayoría de este Tribunal, consideramos conveniente exponer con detalle los preceptos en virtud de los cuales se confirma la dictada por el Tribunal de Circuito de Apelaciones.  Veamos, pues.

I

El 29 de agosto de 1992, la Sra. Neyda Martínez Mora (en adelante Sra. Martínez) y Acana Corporation (en adelante Acana) firmaron un contrato de empleo con un término probatorio de tres (3) meses. Desde ese día, la Sra. Martínez se desempeñaría como

representante de ventas del proyecto Mansiones de Santa Bárbara, en el pueblo de Gurabo. Su horario de trabajo era de 10:00 a.m. a 2:00 p.m. de lunes a miércoles y de 1:00 p.m. a 6:00 p.m. los jueves. Los viernes era su día libre.[1]

El 30 de noviembre de 1992, expirado el periodo probatorio, Acana le concedió la permanencia a la Sra. Martínez. A principios de diciembre de 1992, luego de concluidas las ventas en Mansiones de Santa Bárbara, se le asignó a la Sra. Martínez otro proyecto de ventas, Colinas del Fresno.

Poco después, comenzaron las discrepancias por asuntos de asistencia y horario de trabajo entre la Sra. Martínez y su patrono. Finalmente, el 30 de diciembre de 1992, luego de una discusión telefónica entre la Sra. Martínez y el Presidente de Acana, Sr. Ernesto Rodríguez Alzugaray (en adelante Sr. Rodríguez), la empleada fue despedida.

El 3 de diciembre de 1993, la Sra. Martínez radicó una querella ante el Tribunal de Primera Instancia, Sala Superior de San Juan por despido injustificado y discriminatorio por razón de embarazo, al amparo de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. § 467 *et seq* (en adelante Ley de Madres Obreras o Ley Núm. 3). La Sra. Martínez alegó que <u>desde que el Sr. Rodríguez tuvo conocimiento de que ella se encontraba embarazada</u>, éste comenzó una persecución sistemática en su contra con el propósito de hacerla renunciar a su trabajo, despidiéndola finalmente el 30 de diciembre de 1992. La recurrida señaló que dichas actuaciones le causaron sufrimientos y angustias mentales, por las cuales reclamó daños por la cantidad de ciento cincuenta mil dólares ($150,000.00), más todos

---

[1] Así surge del contrato original entre la Sra. Martínez y Acana, de fecha de 29 de agosto de 1992.

los salarios dejados de percibir desde la fecha del despido y comisiones adeudadas.

En su contestación a la querella, Acana negó las alegaciones de discrimen por razón de sexo y embarazo. Alegó, además, que <u>desconocía el alegado estado de embarazo de la querellante</u>, y que el despido fue justificado pues la Sra. Martínez violó los términos y condiciones de su contrato de empleo y llevaba un patrón de conducta impropia mientras trabajó para Acana.

Tras varios trámites procesales se celebró una vista evidenciaria. Conforme surge de la prueba testifical y documental desfilada, el Sr. Rodríguez llamó el 7 de diciembre de 1992 a la oficina de ventas del proyecto Colinas del Fresno, y no encontró a la Sra. Martínez allí. Por tal razón le envió un memorando al día siguiente, 8 de diciembre de 1992, en el cual le indicó que tenía que cumplir con su horario de trabajo: 9:30 a.m. a 5:30 p.m. de lunes a miércoles, jueves de 9:30 a.m. a 3:30 p.m. y viernes libre. Le indicó también que de repetirse la situación, se vería obligado a "tomar medidas drásticas".

La Sra. Martínez contestó esta comunicación mediante memorando de 14 de diciembre de 1992. Señaló que ella sí se había presentado a trabajar el día 7 de diciembre, y que además, cuando se le asignó a trabajar en el nuevo proyecto no se le informó que su horario había cambiado. Por su parte, el Sr. Rodríguez contestó esta comunicación mediante otro memorando, reafirmándose en su posición original y reiterándole el horario que le señaló en el memorando de 8 de diciembre. Posteriormente, el 30 de diciembre de 1992, el Sr. Rodríguez llamó a la Sra. Martínez a la oficina de ventas de Colinas del Fresno cerca de las 10:00 a.m., y la amonestó porque él ya había llamado antes y la empleada no había contestado el teléfono. La Sra. Martínez le

explicó que esa mañana había llegado temprano pero tuvo que salir a comprar un medicamento a una farmacia localizada cerca de las oficinas. El Sr. Rodríguez no aceptó estas explicaciones y ese mismo día la despidió.

El tribunal de instancia dictó sentencia y desestimó la reclamación de la querellante.  Estimó que la Sra. Martínez no logró establecer hechos concretos y definidos en cuanto a su reclamación por discrimen, ya que a juicio del tribunal carecía de toda lógica y era inverosímil el hecho de que la querellante alegara que desde antes del 30 de noviembre de 1992, fecha en que se le concedió a ésta la permanencia con Acana, la empresa ya conocía del embarazo, y que se le despidiera un mes después por tal motivo.  En cuanto a la acción por despido injustificado, el foro sentenciador concluyó que hubo justa causa para el despido de la recurrida.

Inconforme, la Sra. Martínez apeló esta sentencia ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito).  El foro apelativo revocó el dictamen recurrido por entender que no hubo justa causa para el despido de la apelante.  Además, concluyó que de acuerdo a la Ley de Madres Obreras, una empleada despedida sin justa causa durante su embarazo, tiene una causa de acción bajo la referida ley independientemente de que el embarazo haya sido o no el factor que motivó el despido, y que por esa razón era irrelevante que el patrono conociera o no del estado de embarazo de la obrera al momento de despedirla.  Así pues, concluyó que la Sra. Martínez tenía derecho a los beneficios que provee la Ley de Madres Obreras, y devolvió el caso al tribunal de instancia para que se fijara el cálculo de los daños conforme a dicha legislación.

Acana recurrió de esta sentencia ante nos mediante recurso de certiorari, señalando los siguientes errores:

> Primero:...**[C]oncluir que la recurrida se encontraba en estado de embarazo** y disponer que es inmaterial el hecho de que el patrono conociera o no del embarazo; creando con ello una presunción.
> Segundo:...[D]isponer la celebración de una vista para dilucidar el monto de los daños sufridos por la Sra. Martínez al amparo de la Ley 3.
>
> Tercero:...[A]l aplicar el derecho a los hechos.

**Acordamos revisar y expedimos el recurso solicitado.**

II

Por estar íntimamente relacionados, discutiremos en conjunto lo errores señalados.

La Sec. 4 de la de Ley de Madres Obreras dispone:

> El patrono no podrá, **sin justa causa**, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo. 29 L.P.R.A. § 469. (Énfasis suplido.)

La Ley de Madres Obreras establece dos (2) protecciones principales para la mujer embarazada en el ámbito laboral: (1) la prohibición del despido sin justa causa, que se refiere al concepto de justa causa bajo las leyes laborales; y (2) la prohibición de despido por merma en la producción como consecuencia del embarazo, lo cual, en el caso de una mujer en estado de gestación, no constituye justa causa para el despido.

Así pues, es una vez la empleada reclama que fue despedida de su empleo mientras estaba embarazada, y luego establece mediante prueba ese hecho básico, que surge la **presunción de que el despido fue injustificado**. Entonces, el patrono viene obligado a rebatir dicha presunción aportando prueba que establezca, no que el despido de la obrera embarazada no fue discriminatorio, sino **que el despido fue uno justificado**. Véase, <u>Rivera Águila</u> v. <u>K-Mart de P.R.</u>, 123 D.P.R. 599

(1989). Si el patrono no logra establecer la justa causa para el despido, la obrera tendrá derecho a los beneficios dispuestos en la Ley de Madres Obreras, que incluyen una doble compensación de los daños y perjuicios que el despido le hubiese causado a la empleada, más el derecho a reposición en su empleo.[2]

**Ahora bien, recientemente, en <u>Santiago</u> v. <u>Oriental Bank & Trust</u>, res. el 18 de junio de 2002, resolvimos que en una reclamación bajo la Ley de Madres Obreras, aunque se establezca que el despido de la obrera embarazada fue injustificado, el patrono puede aducir** como

-----

[2]     **Específicamente, la Ley de Madres obreras dispone que:**

> **Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de su merma en su producción mientras ésta se encuentra en estado de embarazo o rehúse a restituirla en su trabajo luego del alumbramiento, incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños que cualquiera de los actos antes mencionados haya causado a la trabajadora, o por una suma no menor de mil dólares ($1,000.00) ni mayor de cinco mil dólares ($5,000.00) a discreción del tribunal si no se pudieran determinar daños pecuniarios, o el doble de éstos si montaran a una suma menor de mil dólares ($1,000.00). La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta sección. 29 L.P.R.A. § 469.**

defensa afirmativa **que desconocía del embarazo de la obrera al momento del despido. A estos efectos, señalamos que:**

> [S]i bien hemos establecido que el despido no tiene que ser discriminatorio por razón de embarazo para que la Ley de Madres Obreras sea de aplicación, sostener que bajo dicho estatuto es irrelevante que el patrono conozca o no del embarazo equivaldría a eliminar el eje central de dicho estatuto: el disuadir la conducta voluntaria nociva de los patronos contra las mujeres embarazadas, disponiendo severas sanciones económicas contra aquellos patronos que a sabiendas subvierten la política pública laboral esbozada en la Ley de Madres Obreras... Es el conocimiento del embarazo por parte del patrono lo que establece la culpa de éste, agrava la acción de despido sin justa causa, y justifica que se le impongan con todo su rigor las sanciones económicas que establece la Ley de Madres Obreras. **Santiago** v. **Oriental Bank & Trust**, **supra**. (Énfasis en el original.)

**Por consiguiente, el desconocimiento por parte del patrono del estado de embarazo de una empleada es una defensa afirmativa frente a una acción bajo la Ley de Madres Obreras por despido injustificado de una empleada embarazada. Si el patrono logra establecer dicho desconocimiento, el remedio disponible para la obrera embarazada despedida sin justa causa será el que provee la Ley sobre Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. § 185(a) *et seq*. Por supuesto, la carga probatoria para establecer dicha defensa corresponde al patrono, y la obrera a su vez tendrá la oportunidad de demostrar, mediante evidencia directa o circunstancial, que el patrono conocía del embarazo o que dicho conocimiento le era imputable. Santiago v. Oriental Bank & Trust, supra.**

A la luz de los hechos y el derecho expuesto, analicemos el caso de autos.

**III**

**A.**

Al presentar su querella bajo la Ley de Madres Obreras, la Sra. Martínez alegó que una vez el Sr. Rodríguez, Presidente de Acana, se enteró de su estado de embarazo, éste comenzó una persecución en su contra que culminó con un despido injustificado y discriminatorio. Con estas alegaciones, la demandante adujo una causa de acción al amparo de la Ley de Madres Obreras. Por su parte, Acana alegó en su contestación que el despido fue justificado y además, que desconocía del alegado estado de embarazo de la Sra. Martínez al momento del despido.

Luego de celebrada la vista evidenciaria del caso, el foro de instancia desestimó la querella presentada por la recurrida porque ésta no logró establecer los elementos de una acción de despido injustificado por discrimen por razón de embarazo. Tal enfoque es erróneo. Para que prospere una acción bajo la Ley de Madres Obreras no es necesario establecer que el despido fue discriminatorio; basta con probar que el despido ocurrió mientras se encontraba la obrera embarazada. Con esto se activa la presunción de despido injustificado bajo la Ley de Madres Obreras. Es al patrono a quien le corresponde establecer que el despido de la obrera estuvo justificado. Por consiguiente, actuó correctamente el Tribunal de Circuito al concluir que el foro de instancia utilizó un estándar incorrecto al desestimar la acción bajo la Ley de Madres Obreras.

El foro apelativo también concluyó, contrario a lo resuelto por el tribunal de instancia, que el despido de la Sra. Martínez fue injustificado. Coincidimos con el Tribunal de Circuito en dicha apreciación. Según Acana, se justificaba el despido de la Sra. Martínez pues no la encontró en la oficina en dos (2) ocasiones en

las cuales el Presidente de Acana intentó comunicarse con ella por teléfono. La Sra. Martínez negó haberse ausentado de la oficina en esas dos (2) ocasiones, aunque sí admitió que una ocasión pudo haberse retrasado por desconocer su nuevo horario en Colinas del Fresno. También admitió que en otra oportunidad tuvo que salir de su oficina en horario laborable, pues fue a comprar unos medicamentos a la farmacia.

Hemos resuelto que, como norma general, una falta o evento aislado no es razón suficiente para despedir a un empleado. Para justificar un despido se requiere un patrón de conducta reflejado en una actitud o una violación reiterada de las normas de la empresa o lugar de trabajo. Véase, Santiago v. Kodak Caribbean, Ltd, 129 D.P.R. 763 (1992). Una sola ofensa o primera falta se considerará justa causa para el despido sólo por excepción, si dicha falta u ofensa en tan grave que pone en riesgo el orden, la seguridad o el buen funcionamiento de la empresa, o si es de tal seriedad que revele una actitud o un detalle de carácter tan lesivo a la paz y el buen orden de la empresa que constituye imprudencia esperar su reiteración para separar al empleado de la empresa. Véase, Secretario del Trabajo v. I.T.T., 108 D.P.R. 536 (1979).

A la luz de esta normativa y la prueba presentada ante el tribunal de instancia, es forzoso concluir que el despido de la Sra. Martínez fue injustificado. Una alegada ausencia y una tardanza no constituyen el patrón de conducta lesiva que justifica la sanción drástica del despido. La conducta de la Sra. Martínez no puso en grave riesgo el orden, la seguridad o eficiencia de Acana, máxime cuando, en ambas ocasiones, la recurrida prontamente ofreció una explicación para su ausencia de la oficina. Así pues, no hubo justa causa para el despido de la Sra. Martínez.

Nos resta determinar si la Sra. Martínez tiene derecho a que se calculen sus daños bajo la **Ley de Madres Obreras**, a la luz de las alegaciones de Acana de que la Sra. Martínez no presentó prueba alguna ante el tribunal de su alegado estado de embarazo, y que la empresa desconocía de dicho embarazo al momento del despido de la obrera.

B.

La protección de la **Ley de Madres Obreras** se fundamenta en la presunción de que el despido de una mujer embarazada es injustificado. Para activar esta presunción es necesario establecer dos hechos básicos: (1) el despido y (2) el estado de embarazo al momento del despido. Al igual que la presunción de despido discriminatorio establecida en el Art. 3 de la Ley Núm. 100,[3] esta presunción entra en juego en la etapa probatoria del caso; o sea, la presunción se activa en la vista evidenciaria que se celebre.[4] Uno de los propósitos de la **Ley de Madres Obreras** es pues, facilitarle a la empleada el probar su caso.

Activada ya la presunción, el peso de la prueba cambia, el *onus probandi* recae entonces sobre el patrono. Si éste no presenta prueba para rebatirla, se considera que la empleada ha probado su caso y sólo restará la presentación de la prueba sobre los daños. Por otra parte, si el patrono quiere defenderse y rebatir la presunción de despido sin justa causa, éste deberá, o bien atacar el hecho básico del embarazo, o presentar evidencia que contradiga el hecho presumido, o sea, la ausencia de justa causa para el despido. En este sentido, la presunción que establece la **Ley de Madres Obreras**

---

[3]   Ley Núm. 100 de 30 de junio 1959, 29 L.P.R.A. § 146 *et seq.*

opera bajo los principios generales que establecen las Reglas de Evidencia para interpretar las presunciones establecidas por ley.

En este caso, la Sra. Martínez alegó que desde que el patrono se enteró del embarazo, comenzó una persecución sistemática en su contra que culminó con el despido. Acana, el patrono, negó esta alegación y adujo específicamente que al momento del despido desconocía del alegado estado de embarazo. No negó, sin embargo, el hecho del embarazo de la querellante. En la vista en su fondo, la Sra. Martínez declaró que se había enterado que estaba embarazada durante el mes de octubre de 1992. Por su parte, no surge de la exposición narrativa de la prueba que Acana hubiese negado en algún momento durante dicha vista el hecho del embarazo de la Sra. Martínez. En su testimonio, el Presidente de Acana no negó dicho estado de embarazo, sino que se limitó a declarar que desconocía del mismo. Por su parte, tampoco el tribunal sentenciador puso en duda el hecho del embarazo al momento del despido. En su sentencia, el Juez de instancia señaló que según el testimonio de la querellante, el patrono tenía conocimiento de su estado de embarazo desde noviembre de 1992, o sea, antes de concederle la permanencia, el 30 de noviembre.

A la luz de lo anterior es forzoso concluir que la querellante estableció, mediante su testimonio no contradicho y creído por el tribunal, el hecho básico de encontrarse embarazada al momento del despido, y activó de esta manera la presunción de despido injustificado bajo la Ley de Madres Obreras. Ante el testimonio de la Sra. Martínez, Acana no podía cruzarse de brazos. Sin embargo,

---

[4]    Véase, Sociedad de Gananciales v. TOLIC, res. el 30 de junio de 2000, 151 D.P.R. _____ (2000), 2000 TSPR 115, 2000 J.T.S. 125.

se limitó a presentar evidencia para establecer que el hecho presumido, es decir, el despido injustificado, no ocurrió.

C.

Corresponde que analicemos finalmente si en las circunstancias de este caso Acana logró establecer la defensa afirmativa de que desconocía del estado de embarazo de la Sra. Martínez al momento del despido.

De la exposición narrativa estipulada de la prueba surge que la Sra. Martínez testificó que comenzó a utilizar "ropa ancha" ya para el mes de octubre o noviembre. También declaró que le informó al Presidente de Acana que padecía de una diabetes estacionaria como consecuencia del embarazo, y que por razón de algunas complicaciones que tenía por el embarazo no podía seguir personándose a las instituciones bancarias. Testificó además que durante el mes de noviembre se sometió a una operación llamada cerclaje, en la cual le "cosieron el útero"; que estuvo hospitalizada del 9 al 11 de noviembre, y que tuvo que permanecer en descanso hasta el día 15 de noviembre.[5]

Por otra parte, la Sra. Linda Paraliticci, quien vivía frente a la casa modelo de Mansiones de Santa Bárbara (primer proyecto en que trabajó la Sra. Martínez) testificó que había visto a la demandante utilizando batas de maternidad, y que habían hablado sobre el embarazo de ésta. También declaró el Sr. Joel Rafael Vázquez Figueroa, quien a la fecha de ocurrir los hechos que dieron lugar

---

[5]    Consta en el expediente el certificado médico recomendando el descanso de la Sra. Martínez durante este periodo, aunque no surge de dicho certificado la causa médica por la cual se recomendó el descanso.

a esta demanda era el gerente general de ventas de Acana.[6]  **Éste testificó que en una ocasión había ido al proyecto Mansiones de Santa Bárbara, y que, aunque no notó que la demandante estuviera embarazada, sí vio que usaba ropa ancha.**  Declaró además que se había enterado del embarazo de la Sra. Martínez cuando el propio Sr. Rodríguez le preguntó, para eso del mes de noviembre, el por qué no le había informado del embarazo de la demandante, **a lo cual el Sr. Vázquez contestó que "él no lo sabía".**

**Por su parte, el Sr. Rodríguez, Presidente de Acana, declaró que no sabía que la demandante estaba embarazada, que desconocía si ésta utilizaba ropa de maternidad, que nunca "escuchó de boca de la [Sra. Martínez] la palabra cerclaje, y que desconocía si en la conversación telefónica que sostuvo con la Sra. Martínez el 30 de diciembre de 1992, día del despido, ésta le informó que estaba embarazada.**

**Examinada la exposición narrativa y la prueba documental que obra en el expediente, concluimos que Acana sí conocía del estado de embarazo de la Sra. Martínez o que, al menos, dicho conocimiento le era imputable.  De los testimonios surge que la Sra. Martínez estuvo utilizando ropa de maternidad, y quien a la fecha de los hechos era el gerente de ventas de Acana, testificó que el presidente de dicha entidad le había recriminado, aproximadamente para el mes de noviembre, antes del despido de la Sra. Martínez, el por qué no le había informado del estado de embarazo de ésta.  Esto concuerda con lo declarado por la recurrida acerca de las conversaciones que tuvo con el Presidente de Acana, mas o menos para la misma fecha, sobre su estado de embarazo y las condiciones físicas que ésta estaba**

---

[6]    A la fecha del juicio, el Sr. Vázquez trabajaba para otra compañía, Tiri.  Éste fue llamado a declarar como testigo de la parte demandante,

padeciendo.  Concluimos pues que Acana no demostró que desconocía del embarazo de la Sra. Martínez al momento de despedirla.

Es en virtud de los fundamentos antes expuestos que procede confirmar la sentencia del Tribunal de Circuito de Apelaciones.


                                    **Miriam Naveira de Rodón**
                                    **Juez Asociada**

---

Sra. Martínez.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Neyda Martínez Mora**

    **Recurrida**

        **v.**

                        **CC-1998-583**

**Acana Corporation H/N/C
Acana Real Estate**

    **Peticionario**

SENTENCIA

**San Juan, Puerto Rico, a 23 de agosto de 2002**

I

**La peticionaria, Acana Corporation H/N/C Acana Real Estate (en adelante Acana) nos solicitó la revisión de una sentencia emitida por el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Dicha sentencia revocó el dictamen del Tribunal de Primera Instancia, Sala Superior de San Juan, que a su vez desestimó varias de las reclamaciones presentadas contra Acana Corp. sobre discrimen por razón de embarazo, despido injustificado y reclamación de salarios.**

El Tribunal de Circuito entendió que la señora Martínez tiene una causa de acción en virtud de la Ley Núm. 3 de 13 de marzo de 1942, 29 L.P.R.A. sec. 467, et seq. toda vez que fue despedida injustificadamente de su empleo mientras se hallaba en estado de embarazo. Devolvió el caso al tribunal de instancia para que determinara el monto de los daños conforme a dicha legislación.

Inconforme, Acana recurrió ante nos señalando los siguientes errores:

> Primero:...**[C]oncluir que la recurrida se encontraba en estado de embarazo** y disponer que es inmaterial el hecho de que el patrono conociera o no del embarazo; creando con ello una presunción.

> Segundo:...[D]isponer la celebración de una vista para dilucidar el monto de los daños sufridos por la Sra. Martínez al amparo de la Ley 3.

> Tercero:...[A]l aplicar el derecho a los hechos.

Acordamos revisar y expedimos el recurso solicitado.

Luego de analizar, estudiar y examinar la sentencia del Tribunal de Circuito, procede confirmar la misma y devolver el caso al foro de instancia para que resuelva el asunto conforme dispuso el foro apelativo.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo