Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| ARLENE FONTÁNEZ ROSARIO<br>Apelante<br><br>v.<br><br>UNIVERSIDAD DE PUERTO RICO y SU JUNTA DE GOBIERNO; COMPAÑÍA DE SEGUROS ABC<br>Apelados | KLAN202400996 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2023CV07260<br><br>Sobre:<br>Ley Núm. 2 del 17 de octubre de 1961 (Procedimiento Sumario), Ley 80 del 30 de mayo de 1976 (Despido Injustificado), Ley Núm. 3 del 13 de marzo de 1942 (Ley de Protección de Madres Obreras) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Comparece Arlene Fontánez Rosario (señora Fontánez Rosario o parte apelante), solicitando que revoquemos una sentencia dictada por el Tribunal de Primera Instancia, Sala de San Juan, (TPI), el 3 de octubre de 2024. Mediante esta, el foro de instancia desestimó la reclamación que la señora Fontánez Rosario presentó contra la Universidad de Puerto Rico (UPR), y su Junta de Gobierno (Junta de Gobierno), (en conjunto, parte apelada), por las siguientes dos razones: 1) porque la Ley Núm. 3 de 13 de marzo de 1942, comúnmente conocida como la *Ley de Protección de Madres Obreras*, (Ley Núm. 3-1942), estatuto en el cual se basó la causa de acción, no le aplica a la UPR al ser esta una corporación pública, no una *empresa de servicio público*, ni un *patrono*; 2) no se agotaron los remedios

administrativos provistos por el Reglamento sobre procedimientos apelativos administrativos de la UPR, Reglamento Núm. 9054 del 23 de octubre de 2018, (Reglamento 9054).

Por los fundamentos que exponemos a continuación, *confirmamos*.

## I. Tracto Procesal

El 31 de julio de 2023, la señora Arlene I. Fontánez Rosario presentó una *Querella* contra la Universidad de Puerto Rico y su Junta de Gobierno, invocando el proceso sumario especial dispuesto por la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2-1961). En esta acumuló dos causas de acción: una por despido injustificado, a tenor con la Ley Núm. 80, del 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq.* (Ley Núm 80-1976), y otra bajo la Ley Núm. 3 de 13 de marzo de 1942, conocida como la Ley de Protección de Madres Obreras, 29 LPRA sec. 466 *et seq.*, (Ley Núm. 3-1942).

En síntesis, alegó que laboró como Oficial de Estadísticas en la UPR, División Institucional de Investigación y Avalúo del Decanato de Asuntos Académico (DiiA), a tiempo completo, durante aproximadamente 8 años y 4 meses, a través de contratos a tiempo fijo de corta duración, que se renovaban continuamente y en aproximadamente 12 ocasiones. Por lo cual, adujo que, a tenor con la jurisprudencia aplicable, dichos contratos no podían considerarse como *bona fide* y que por ello debería ser considerara como empleada a tiempo indeterminado, con todos los derechos que dicha clasificación conlleve.

Seguido, manifestó que el 31 de diciembre de 2022, fue despedida injustificadamente por la UPR, quien hizo caso omiso al estado de derecho vigente en cuanto a que dicho contrato no era *bona fide,* dada las circunstancias de contratación entre la parte apelante y la parte apelada antes relacionadas y, consecuentemente, tenía derecho a permanecer en su empleo. Además, sostuvo que la notificación de la terminación de su empleo ocurrió mientras se encontraba disfrutando de su licencia por

maternidad, lo cual era de conocimiento de su supervisora, siendo esta quien le notificó que no sería renovado su contrato de empleo. En vista de ello, solicitó ser indemnizada en varias partidas que especificó.

El 21 de agosto de 2023, la UPR compareció, sin someterse a la jurisdicción del tribunal, mediante *Moción en Solicitud de Desestimación* bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Solicitó tal remedio aseverando que el Tribunal carecía de jurisdicción para atender la controversia presentada, pues a la referida institución no le aplicaban ninguna de las disposiciones legales bajo las cuales fue presentada la *Querella.* Es decir, sostuvo que tanto la Ley Núm. 2-1961, *supra,* como la Ley Núm. 80-1976, *supra,* y la Ley Núm. 3-1942, *supra,* era legislación laboral aplicable al ámbito privado, no extensible a la UPR, una corporación pública dedicada a la educación.

Sobre lo anterior, pero limitándonos a los que nos concierne[1], con relación a la causa de acción al amparo de la Ley Núm. 3-1942, *supra,* como dijimos, la parte promovente de la moción dispositiva afirmó que dicho estatuto no era de aplicación a la UPR, pues es una corporación pública que no pertenece al sector privado, además, ya el Tribunal Supremo había dictaminado que solo cobija *a las mujeres obreras del sector privado.* En la misma dirección sostuvo que, dado que la UPR es una corporación pública, que no pertenece al sector privado, no podía considerársele como un "patrono" al que le aplicaran las disposiciones de la Ley Núm. 3-1942, *supra.*

Por último, en la misma moción esta parte añadió que el Sistema de Personal de la UPR está fundamentado sobre el sistema de mérito que permea el servicio público, para cuyo propósito fue aprobado el Reglamento 9054, *supra.* Que, a pesar de la existencia de dicha reglamentación, la parte

---

[1] En la *Moción de desestimación* fueron expuestos argumentos sobre por qué la Ley Núm. 2-1961, *supra,* ni la Ley Núm. 80-1976, *supra,* eran aplicables a la UPR, (se trata de derecho laboral privado, y la UPR no es una empresa privada), pero no abundamos sobre estos en el recuento procesal, pues, como se verá, la apelante desistió de dichas causas antes de que recayera la *Sentencia* apelada.

apelante no había agotado los remedios administrativos allí dispuestos, antes de acudir al Tribunal, por lo que el foro judicial estaba impedido de ejercer su jurisdicción sobre el asunto.

Por su parte, la Junta de Gobierno de la UPR también presentó una *Solicitud de Desestimación,* sin someterse a la jurisdicción del tribunal, donde reprodujo los argumentos ya expuestos por UPR, que sintetizamos en los párrafos que preceden, dirigidos a establecer, en lo pertinente, la inaplicabilidad de la Ley Núm. 2-1961, *supra,* en la causa de acción presentada. Añadió a lo señalado por la UPR que, según la reglamentación universitaria citada, los empleados con contratos a término fijo, como es el caso de la apelante, no tienen derecho a reclamar la licencia de maternidad por el tiempo adicional al término de vigencia de su contrato. En consonancia, afirmó que la señora Fontánez Rosario no tenía expectativa alguna de que su licencia se extendiera más allá del 31 de diciembre de 2022, fecha en que vencía su contrato.

A raíz de lo cual, el 4 de septiembre de 2023, la señora Fontánez Rosario presentó una *Oposición a Solicitudes de Desestimación.* Mediante dicha moción, la apelante informó al TPI primero, el desistimiento de lo siguiente: 1) que la *Demanda* se condujera a través del procedimiento sumario provisto en la Ley Núm. 2-1961, *supra;* 2) la causa de acción sobre despido injustificado al amparo de la Ley Núm. 80-1976, *supra.* A pesar de desistir de lo enumerado, afirmó mantener la causa de acción instada al amparo de la Ley Núm. 3-1942, *supra,* aunque bajo el trámite ordinario, para lo cual esgrimió argumentos en contra de la moción de desestimación.

En específico, la apelante adujo que la Sección 8 de la Ley Núm. 3-1942, 29 LPRA sec. 471, les aplicaba a empleadas del sector público bajo contratos a tiempo determinado y que sus protecciones se extendían posterior al término de contratación, si se creó una expectativa de continuidad en el empleo frente a esa empleada. Esgrimió que la UPR había propuesto una interpretación errada de la Opinión de nuestro Tribunal

Supremo en *Rivera Águila v. K-mart de Puerto Rico*, 123 DPR 599 (1989), cuando dicho foro afirmó que *esta sección* (Sec. 8 de la Ley Núm. 3-1942) *protege a todas las mujeres obreras del sector privado que están en estado de gestación, aun a las que están en periodo probatorio,* pues no se había excluido expresamente a las empleadas públicas. También, en lo concerniente a la presunta falta de agotamiento de remedios administrativos que le imputó la parte apelada, sostuvo que el Reglamento 9054 no resultaba de aplicación a este caso, pues el asunto era gobernado por la Ley Núm. 3-1942, *supra,* y tal asunto no formó parte de las alegaciones incluidas en la *Querella*. Sobre este añadió que, para sustentar el argumento sobre la presunta falta de agotamiento de remedios, la UPR utilizó prueba ajena a las alegaciones contenidas en la *Querella*, estableciendo una controversia de hechos que tornó la moción de desestimación en una de sentencia sumaria, por virtud de las Reglas 10.2 y 10.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 y 10.3 respectivamente. A partir del propuesto cambio en la moción dispositiva propuesto por la apelante, esta aseveró que tenía derecho a descubrir prueba respecto a tal controversia. Finalizó aduciendo que resultaba inaplicable la norma de abstención judicial por falta de agotamiento de remedios administrativos, pues nunca les fueron notificados a ésta conforme a derecho.

A su vez, la UPR presentó una *Réplica a la Oposición a Solicitudes de Desestimación*. En esta: aseveró que fue la propia Opinión en *Rivera Águila v. K-mart de Puerto Rico, supra,* donde expresamente se indicó que la Ley Núm. 3-1942, *supra,* provee protección a las mujeres en el sector, privado, (no en el público), lo cual no requiere de interpretación alguna; cuando en la Sección 8 de la ley citada indica que será aplicable, en lo pertinente, a empresa de servicio público, no se refiere a corporaciones públicas, como lo es la UPR; las discusiones de dicho estatuto ha sido en el contexto laboral privado;  abundó sobre el significado jurídico de "empresa de servicio

público" con el fin de explicar por qué la Ley Núm. 3-1942, *supra,* no le aplicaba a la UPR, pues es una corporación pública; por virtud de la Ley Orgánica de la Universidad de Puerto Rico, Ley Núm. 1 de 20 de enero de 1966, según enmendada, Ley Núm. 1-1966, se le otorgó facultad a dicha institución para regir sus asuntos administrativos y aprobar los reglamentos a esos efectos, entre los cuales están el Reglamento 9054, y el Reglamento 6479, *Reglamento General de la UPR,* que resultaban de aplicación en la vertiente administrativa.

Luego, el 22 de septiembre de 2023, la señora Fontánez Rosario solicitó que se desglosara la *Réplica a la Oposición a las Solicitudes de Desestimación.* A los pocos días también instó *Dúplica a Réplica* en la que reiteró sus planteamientos, pero añadió que el término "empresa de servicio público" no había sido definido ni limitado a compañías azucareras de Puerto Rico, y que la alegada falta de jurisdicción se cimentó y fue consecuencia de los propios actos y omisiones de la parte apelada.

Es así como, el 7 de octubre de 2024, el foro primario emitió la *Sentencia* desestimatoria de la causa de acción instada por la apelante, al determinar, como adelantamos, que la Ley Núm. 3-1942, *supra,* no le aplica a la UPR; y que tampoco se agotaron los remedios administrativos que la reglamentación de dicha institución educativa ordena.

Inconforme, la señora Fontánez Rosario acudió ante nosotros mediante un recurso de *apelación,* imputándole al foro primario haber incurridos en los siguientes errores:

> **Primer Error:** Erró el TPI al desestimar la querella de marras, pues las alegaciones en que se fundamenta las mociones de desestimación de los demandados apelados son hechos que se salen de las alegaciones de la querella, convirtiéndose las mismas en unas de sentencia sumaria, por lo que a tenor con la Regla 10.2 de las de Procedimiento Civil, la Sra. Fontánez tiene derecho a descubrir prueba sobre estas.

> **Segundo error:** Erró el TPI al desestimar la querella de epígrafe, ya que no aplicó la jurisprudencia interpretativa de la Regla 10.2 de las de Procedimiento Civil, que resuelve y exige dar por ciertas todas las alegaciones bien fundamentadas, lo

anterior a la luz más favorable de la parte demandante, resolviendo toda duda a favor de esta última.

**Tercer error:** Erró el TPI al resolver que la Ley Núm. 3 de 13 de marzo de 1942, comúnmente conocida como la Ley de Protección de Madres Obreras, no aplica a las empleadas de la Universidad de Puerto Rico, por esta última ser una corporación pública y no una empresa de servicio público.

El 6 de diciembre de 2024 compareció ante este foro intermedio la Junta de Gobierno mediante *Alegato en Oposición a Apelación.* Luego, el 10 de diciembre de 2024, la UPR presentó su *Alegato de la Universidad de Puerto Rico en Oposición a la Apelación.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II. Exposición de Derecho

### A. Ley de Protección de Madres Obreras

a.

El Art. II, Sec. 1 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, establece expresamente que no podrá establecerse discrimen alguno, entre otras circunstancias, por razón de sexo. En el ámbito obrero-patronal, el discrimen por razón de sexo está prohibido por varias leyes, entre las que se encuentran la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 147-151; que prohíbe que se despida, suspenda o discrimen contra un empleado por razón de sexo; y la Ley 69 -1986, 20 L.P.R.A. sec. 1321, que prohíbe el hostigamiento sexual en el empleo. *Santiago v. Oriental Bank*, 157 DPR 250, 256 (2002).

A las leyes referidas, que identifican como valor jurídico la prohibición al discrimen por razón de sexo en las relaciones obrero-patronales, se une la *Ley de Protección de Madres Obreras*, Ley Núm. 3-1942, *supra.* Mediante dicho estatuto se prohíbe en particular el discrimen por razón de embarazo, el cual es reconocido como una modalidad del discrimen por razón de sexo. *Santiago v. Oriental Bank,* supra, pág. 256. Abundando, el referido estatuto protege el derecho de la mujer a continuar

en el empleo y a que no se le despida arbitrariamente durante la etapa de gestación. De esa manera se evitan las consecuencias socioeconómicas que durante el embarazo y después de éste podría conllevar tal despido. *Rivera Águila v. K-Mart de PR*, 123 DPR 599, 608 (1989).

b.

En lo relativo a su aplicación, la Sección 8 de la Ley Núm. 3-1942, *supra,* dispone lo siguiente:

> A los fines de esta Ley, se entenderá por obrera a toda mujer empleada mediante sueldo, salario, jornal, contrato a tiempo determinado o cualquiera otra manera de compensación **en cualquier oficina, establecimiento comercial o industrial o empresa de servicio público**. Las protecciones de esta Ley serán de aplicación a las obreras empleadas mediante contrato a tiempo determinado, mientras subsista la relación obrero patronal, a menos que se le haya creado a ésta una expectativa real de continuidad en el empleo, en cuyo caso, se extenderán las protecciones de esta Ley más allá de la fecha en que se suponía que concluyera su contrato de trabajo[2]. (Énfasis provisto). 29 LPRA sec. 473.

### B. La UPR

a.

La UPR es el órgano de educación superior que tiene la misión esencial de alcanzar unos objetivos delimitados por ley en cumplimiento de su obligación de servicio al Pueblo de Puerto Rico y a su debida fidelidad a los ideales de nuestra sociedad democrática. Art. 2, Ley Núm. 1 de 20 de enero de 1966, 18 L.P.R.A. sec. 601. Los objetivos primordiales de esta institución son promover el saber, investigar, educar y proveer servicios a la ciudadanía, industria y gobierno. *Íd.*

La UPR no opera con ánimo directo ni indirecto de lucro a pesar de que posee ciertas facultades corporativas que la asemejan fundamentalmente a una empresa privada. *Sepúlveda v. U.P.R.,* 115 D.P.R. 526, 527 (1984). La concesión de estas facultades tiene como objetivo el

---

[2] Antes, en la Sección 1ra de la Ley Núm. 3-1942, *Exposición de Motivos*, el Legislador se había pronunciados en iguales términos al aludir a las *obreras puertorriqueñas que trabajen en oficinas, establecimientos comerciales e industriales y en empresas de servicio público.* 29 LPRA sec. 466.

proveerle a la U.P.R. la mayor autonomía posible para asegurar su debido funcionamiento acorde con su más amplia libertad de cátedra y de investigación científica. Ahora bien, lo anterior no la convierte en una empresa privada dedicada a negocios lucrativos. Su estructura es claramente distinguible de cualquier empresa privada, *Sepulveda v. UPR*, supra.

Sobre lo mismo, la UPR *es una corporación pública creada por ley, y constituye la principal institución de educación superior del País. Rivera Torres v. U.P.R.*, 209 DPR 539, 553 (2020); *Cordero Jiménez v. U.P.R.*, 188 DPR 129, 146 (2013); *U.P.R. v. Asoc. Pur. Profs. Universitarios*, 136 DPR 335 (1994). Esta institución no opera con ánimo directo o indirecto de lucro. *Rivera Torres v. U.P.R., supra,* pág. 553; *Sepúlveda v. UPR*, *supra*, p. 527. La UPR *no es el tipo de agencia o instrumentalidad que opera como una empresa o negocio privado -es decir,* ***no es patrono- para fines de una reclamación laboral al amparo de la Ley Núm. 100-1959, ni del proceso sumario laboral establecido en la Ley Núm. 2-1961***. (Énfasis provisto). *Rivera Torres v. U.P.R., supra,* 553-554.

b.

Por otra parte, el Artículo 3(a) de la *Ley de la Universidad de Puerto Rico,* 18 LPRA sec. 602(a), establece que dicha institución será gobernada por una Junta de Gobierno, denominada *Junta de Gobierno de la Universidad de Puerto Rico.*

Entre las facultades que la referida legislación delegó a la Junta de Gobierno se encuentra, en lo pertinente, la de *adoptar normas respecto a los derechos y deberes del personal universitario.* 18 LPRA sec. 602(11). A tenor, la Junta de Gobierno aprobó el *Reglamento General de la Universidad de Puerto Rico,* Reglamento 6479, cuyo Sistema de Personal ha sido descrito como que: *está fundamentado sobre el sistema de mérito, principio que permea todo el sistema de personal del servicio público. Mercado Vega v. U.P.R.*, 128 DPR 273, 283 (1991). El Artículo 56 de este *Reglamento* se

encarga de establecer lo relativo a la *Licencia de Maternidad*, particularizando los derechos de las trabajadoras desde la sección 56.1 a la 56.11.

Cabe mencionar sobre el mismo tema que la Certificación Núm. 107 (2021-2022) de la UPR establece la *Política y procedimientos para el manejo de situaciones de discrimen por sexo o género en la Universidad de Puerto Rico*, cuyo Artículo XII dispone lo relativo a los derechos de las embarazadas y sus familias.

Finalmente, bajo el mismo poder reglamentario también fue aprobado el Reglamento 9054, *Reglamento sobre Procedimientos Apelativos Administrativos de la UPR*, a través del cual se instrumentalizan los procesos adjudicativos administrativos, ante la propia UPR, concernientes a los derechos del personal.

**C**. **Jurisdicción primaria y agotamiento de remedios administrativos**

Tanto la doctrina de agotamiento administrativo como la de jurisdicción primaria cumplen el objetivo de mantener un adecuado balance y distribución de poder y tareas entre las agencias administrativas y el poder judicial. *García Cabán v. U.P.R.*, 120 DPR 176, 177-178 (1987); *Febres v. Feijoó*, 106 D.P.R. 676 (1978).

La doctrina de jurisdicción primaria pretende determinar si corresponde a una agencia o a un tribunal **la intervención inicial** en una controversia. (Énfasis provisto). *Íd.*

En cambio, la doctrina de génesis jurisprudencial de agotamiento de remedios administrativos se dirige a dilucidar cuándo es el momento apropiado para que los tribunales intervengan en una controversia previamente sometida a una intervención administrativa. Por tanto, el examinar su posible aplicación surge cuando, **habiendo comenzado un procedimiento o actuación en una agencia, se solicita la intervención judicial para revisar determinaciones u obtener un**

**remedio judicial, antes de que se haya culminado todo el trámite o procedimiento administrativo establecido.** (Énfasis provisto). *Íd.* La doctrina de agotamiento de remedios descansa en el supuesto de que nadie tiene derecho a una protección judicial por un alegado daño sin antes haber agotado el remedio administrativo prescrito. *Guzmán y otros v. ELA*, 156 DPR 693, 711 (2002), citando a *Mercado Vega v. UPR*, 128 DPR 273, 282 (1991).

El agotamiento de remedios administrativos se trata de un requisito que no debe ser soslayado, a menos que se configure alguna de las limitadas excepciones que, bajo nuestro ordenamiento, justifican preterir el cauce administrativo y permiten la intervención del tribunal antes de que culmine el procedimiento dispuesto en la agencia correspondiente. *Guzmán y otros v. ELA, supra,* pág. 713.

### III. Análisis y discusión

La controversia principal que nos toca dilucidar está contenida en el señalamiento de error tercero, según incluido en el recurso de apelación, que resulta reducible a lo siguiente; ¿es la Ley Núm. 3-1942, *supra,* comúnmente conocida como la *Ley de Protección de Madres Obreras,* aplicable a la UPR? La respuesta que ofrezcamos a esta interrogante condiciona la disposición de los señalamientos de error restantes.

Según adelantamos en la exposición de Derecho, al examinar la letra de la Ley Núm. 3-1942, *supra,* para determinar su aplicación a la UPR, solo contamos con la siguiente expresión contenida en su Sección 8va: *a los fines de esta Ley, se entenderá por obrera a toda mujer empleada mediante sueldo, salario, jornal, contrato a tiempo determinado o cualquiera otra manera de compensación **en cualquier oficina, establecimiento comercial o industrial o empresa de servicio público***. (Énfasis provisto).

A partir de la alusión a *empresa de servicio público* que se hace en la porción de ley citada, la apelante interpreta que las protecciones contenidas en dicha legislación, dirigidas a las *obreras,* resultan extensibles a las

*empleadas públicas*, y por ello, a las empleadas de la UPR en particular. Bajo esta teoría legal, se propone una interpretación amplia de la acepción *empresa de servicio público*, como inclusiva de la UPR, identificada como *patrono*.

A ello responde la UPR que la Ley Núm. 3-1942, *supra,* tiene como propósito extender salvaguardas a las obreras del sector privado en particular, puesto que las empleadas del sector público ya cuentan con garantías similares, a través del principio de mérito que permea el servicio público y la correspondiente reglamentación aprobada a tales efectos. Además, se afirma que la UPR es una corporación pública, que no puede ser considerada como un *patrono,* según lo ha dispuesto nuestro Tribunal Supremo, a los fines de las disposiciones de la Ley Núm. 3-1942, *supra*, siéndole ajena la nomenclatura *empresa de servicio público,* que fue concebida para otros propósitos.

Sobre lo expuesto, lo cierto es que, al dar lectura a la porción de la Sección 8 citada, salta a la vista que bajo la acepción *obrera* no fueron mencionadas, mucho menos incluidas, las *empleadas de agencias e identidades públicas*, ni las *corporaciones públicas* propiamente, como tampoco fueron identificadas las agencias o entidades públicas como *patrono* para fines de la legislación*,* solo haciéndose alusión al singular término *empresa de servicio público.*

La referida ausencia o descarte en la Ley Núm. 3-1942*, supra,* de alguna mención sobre las agencias o instrumentalidades gubernamentales para que fueran consideradas como *patrono*, a todas luces tampoco pasó por desapercibida a la mirada del Secretario de Justicia de Puerto Rico, a juzgar por sendas Opiniones donde dio cuentas de ese preciso asunto. Así, al este ser requerido para que se expresara sobre la aplicabilidad de la Ley Núm. 3-1942 a las empleadas del servicio público, al menos en dos ocasiones ha contestado en la negativa. En específico, en la primera de dichas consultas, luego del Secretario iniciar afirmando que no cabía duda

sobre la aplicación de dicha legislación a la empresa privada, inmediatamente pasó a sostener que: "en ninguna parte de dicha Ley se habla de empleadas del Gobierno Insular que estén cobijadas por el Servicio Civil"[3]; afirmación que reiteró a los pocos años, al aseverar que, "de las disposiciones de la Ley Núm. 3, no surge de que dicho estatuto sea aplicable a las empleadas de una autoridad gubernamental como las que nos ocupa"[4]. Es de ver que, como causa adicional para concluir que la Ley Núm. 3-1942, *supra*, no era extensible a las empleadas públicas, el Secretario de Justicia razonó que ello resultaba innecesario, ante el hecho de que a esos fines estas ya estaban debidamente cobijadas por el Reglamento de Personal del Gobierno, que disponía lo relativo a las licencias por maternidad[5].

Siguiendo con la apreciación del Secretario de Justicia acerca de los conceptos bajo examen, valga también mencionar la definición que este sugirió del término *empresa de servicio público*:

> La Ley Núm. 3, de 13 de marzo de 1942, según enmendada por la Ley Núm. 39, de 19 de junio de 1969, se aplica a las madres obreras que trabajan en cualquier oficina, establecimiento comercial o industrial, o empresa de servicio público que es aplicable **por lo general a empresas que se dedican a prestar algún servicio de interés público a la comunidad**, **tales como el servicio de agua, alumbrado, telégrafo o teléfono, transportación, etc**., y en vista de que la Autoridad de Edificios Públicos se dedica primordialmente a prestar servicios al Gobierno, y no servicios del tipo indicado a la comunidad en general, lógico es concluir que la Ley Núm. 3, según enmendada, no se aplica a las empleadas de dicha Autoridad. (Énfasis provisto). Op. Sec. Just. Núm. 12 de 1972.

Vista tal descripción de *empresa de servicio público*, aun tomándola para fines *in argüende*, no debe causar polémica alguna admitir que la UPR **no** se dedica a prestar ningún tipo de los servicios identificados como susceptibles de ser considerados dentro del referido concepto. Para nuestra fortuna, contamos con opiniones consistente de nuestro Tribunal Supremo en las que ha descrito a la UPR como, *la principal institución de educación*

---

[3] Op. Sec. Just. Núm. 12-1972.
[4] Op. Sec. Just. Núm. 25-1975.
[5] *Íd.*

*superior del País. Rivera Torres v. U.P.R.*, supra; *Cordero Jiménez v. U.P.R.*, *supra.* En este sentido, el servicio público que presta la UPR es uno bien definido, el educativo a sus estudiantes universitarios, lo que no se asemeja en modo alguno al servicio provisto por otras corporaciones públicas, como aquellas que brindan los relativos a utilidades, que muestran un fuerte componente comercial.

Entonces, retornando a la premisa inicial, también cabe razonar que, no siendo la Ley Núm. 3-1942, *supra,* un estatuto de aprobación reciente, sino al contrario, longevo, de haberlo querido el Legislador, oportunidad ha tenido de sobra para incluir sin tibiezas a las empleadas del sector público como parte de la categoría protegida, o identificar a las agencias públicas como otro *patrono* más, pero no lo ha hecho[6]. Sobre este punto sirva como ejemplo advertir que en la *Ley contra el discrimen en el empleo,* Ley Núm. 100-1959, a través de su Art. 6(2), 29 LPRA sec. 151(2), el Legislador expresamente incluyó dentro del término *patrono* a "aquellas **agencias o instrumentalidades del Gobierno de Puerto Rico** que operen como negocios o empresas privadas", (énfasis provisto), *vis a vis* la mudez legislativa mostrada en la Ley 3-1942, respecto a concebir a las agencias o entidades públicas como *patrono* para efectos de su aplicación a las empleadas públicas.

La alusión a la Ley Núm. 100-1959, *supra,* también nos resulta oportuna al considerar las relativamente recientes expresiones que hizo nuestro Tribunal Supremo en *Rivera Torres v. UPR*, supra, que, juzgamos, trazan la ruta decisoria en el caso ante nuestra consideración. Allí nuestro Tribunal Supremo resolvió, en síntesis, que la Ley Núm. 100-1959, *supra,* **no** resultaba aplicable a la UPR, en tanto dicha institución educativa *no es*

---

[6] Ley Núm. 398 de 13 de mayo de 1947; Ley Núm. 39 de 19 de junio de 1969; Ley Núm. 20 de 5 de agosto de 1975; Ley Núm. 7 de 4 de mayo de 1982; Ley Núm. 39 de 31 de julio de 1991; Ley Núm. 188 de 26 de diciembre de 1997; Ley Núm. 54 de 10 de marzo de 2000; Ley Núm. 425 de 28 de octubre de 2000; Ley Núm. 148 de 19 de julio de 2018; Ley Núm. 95 de 8 de agosto de 2020.

*el tipo de agencia o instrumentalidad que opera como una empresa o un negocio privado,* es decir, *no es patrono para los efectos de la definición que de ello ofrece el estatuto bajo discusión*[7]. *Íd*, pags. 553-554. Obsérvese que, aun cuando la Ley Núm. 100-1959, *supra,* expresamente incluyó en su aplicación a *aquellas* **agencias o instrumentalidades del Gobierno de Puerto Rico** *que operen como negocios o empresas privadas,* con todo, nuestro Tribunal Supremo interpretó que la UPR no se encontraba dentro de dicha categoría, y de aquí que determinara su inaplicabilidad. Cabe resaltarse, además, que bajo el mismo razonamiento el alto Foro resolvió en la Opinión citada, **que tampoco resultaba aplicable a dicha institución universitaria el proceso sumario especial dispuesto en la Ley Núm. 2-1961**, *supra*, que sí está disponible para los empleados de la empresa privada. (Énfasis provisto). *Íd.*

Al enfatizar en la oración que precede, donde nuestro Tribunal Supremo adjudicó que el proceso sumario previsto en la Ley Núm. 2-1961, *supra,* es inaplicable a los empleados de la UPR, resulta necesario advertir que la Sección 7ma de Ley Núm. 3-1942, *supra,* expresamente consigna el derecho de las obreras a utilizar dicho proceso sumario al presentar una causa de acción para reclamar el disfrute del descanso allí previsto. Es decir, el Legislador incluyó como parte de la Ley Núm. 3-1942, *supra,* el derecho de las obreras allí descritas a beneficiarse del proceso sumario que opera en favor de los trabajadores en el sector privado. Por tanto, como se entenderá, ante tal situación no resultaría conciliable sostener, por una parte, que las protecciones que dimanan de la Ley Núm. 3-1942, *supra,* son extensibles a las empleadas de la UPR, para, a la vez, tratar de adherirnos a la diáfana determinación de nuestro Tribunal Supremo en

---

[7] Previo a dicha aseveración, nuestro Tribunal Supremo había advertido en la misma Opinión que, *de la discusión contenida en el historial legislativo surgía que el legislador excluyó al sistema de educación del gobierno y* ***extendió la protección únicamente a los empleados públicos cuyo patrono fuere una agencia o instrumentalidad del gobierno que no operara como una empresa o un negocio privado con ánimo de lucro.*** (Énfasis provisto). *Rivera Torres v. UPR,* supra, pág. 552.

*Rivera Torres v. UPR,* supra*,* a los efectos de que **el proceso sumario previsto en la Ley Núm. 2-1961,** *supra,* **no es aplicable para la UPR**.

Es dentro de tal línea discursiva que juzgamos se debe aquilatar la expresión que hiciera nuestro Tribunal Supremo en *Rivera Águila v. K-Mart de PR,* supra, p. 610, a los efectos de que *la Ley Núm. 3, supra, incluye dentro de su manto de protección **a todas las mujeres obreras del sector privado** que están en estado de gestación, aun a las que están en período probatorio.* (Énfasis provisto). Aunque lo cierto es que en la referida Opinión el Tribunal Supremo no se propuso contestar la controversia que aquí dilucidamos, tampoco juzgamos que tal expresión hubiese sido un mero desliz, sino que ubica dentro de la consistente trayectoria interpretativa de la Ley Núm. 3-1942, *supra,* junto a otras leyes laborales aplicables al sector privado. O sea, nuestro Tribunal Supremo ha manejado, discutido y aplicado la Ley Núm. 3-1942, *supra,* como parte de la legislación laboral que concede derechos a las trabajadoras del sector privado.

A lo anterior se añade que el Tribunal Supremo se ha resistido a tratar a la UPR como un *patrono* para efectos de aplicarle la legislación laboral del ámbito privado, según ya expusimos, y no visualizamos razones por la cuales haría una excepción en el caso de la Ley Núm. 3-1942, *supra.* Ello, máxime cuando la propia alta Curia ha reconocido que el Sistema de Personal de la UPR está fundamentado sobre el sistema de mérito, principio que permea todo el sistema del servicio público, y le ha reconocido autonomía en sus prerrogativas gerenciales en la administración de sus recursos humanos. *Mercado Vega v. UPR*, supra, págs. 283-286.   En consonancia, la UPR cuenta con el *Reglamento General de la Universidad de Puerto Rico,* Reglamento 6479, cuyo Artículo 56 reconoce distintos derechos relativos a la *Licencia de Maternidad*, según particularizados en las secciones 56.1 a la 56.11, y la Certificación Núm. 107 (2021-2022) aludida, que garantiza ciertos derechos a las embarazadas y sus familias. De este modo se sostiene la lógica que permite no aplicar a las empleadas

de la UPR las medidas protectoras concebidas para la mujer obrera, según previstas en la Ley Núm. 3-1942, *supra,* en tanto para las primeras ya se hizo provisión de tales derechos a través de la reglamentación ya aprobada en la UPR.

En consecuencia, coincidimos con el foro apelado al concluir que la Ley Núm. 3-1942, *supra,* no resulta aplicable al caso bajo consideración.

Dispuesto lo cual, consignamos que, contrario a lo que plantea la parte apelante en su escrito ante nosotros, el foro primario estaba en perfecta posición para atender la referida controversia al considerar la moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V., R. 10.2, presentada por la UPR. En este sentido, aunque tomáramos como ciertas las alegaciones contenidas en la *Demanda* presentada, y les concediéramos la interpretación más favorable, *López García v. López García*, 200 DPR 50 (2018), ello en modo alguno hubiese obstado en contra de que se atendiera un asunto eminentemente de derecho como el planteado.

b.

Dicho lo anterior, sin embargo, valga advertir que la no aplicación de las salvaguardas que ofrece la Ley Núm. 3-1942, *supra,* a la mujer trabajadora de la UPR en buena medida está predicada, como explicamos, en la afirmación de que los procesos internos de dicha institución, dispuestos por reglamentación, ofrecen salvaguardas en esa dirección, por lo que no dejaría desprovista a su personal de posibles remedios. Así, y tal como ocurrió en *Mercado Vega v. UPR,* supra, no contamos con prueba documental dirigida a establecer que la UPR le concediera oportunidad a la apelante de hacer los planteamientos que estimara pertinentes a esta causa de acción, a través del cauce administrativo que su reglamentación provee. Por tanto, aunque juzgamos que procede sostener la desestimación de la única causa de acción que permanecía ante el TPI, aquella al amparo de la Ley Núm. 3-1942, *supra,* también determinamos que la UPR debe notificar

a la apelante su determinación, con las debidas advertencias, para permitirle recorrer la vía administrativa, según la reglamentación aquí aludida, y así tener una oportunidad de ser oída[8].

## IV. Parte Dispositiva

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se *confirma* la *Sentencia* apelada y se ordena referir al asunto al trámite administrativo, según lo aquí explicado.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] En modo alguno estamos prejuzgando los méritos de la controversia contenida en la *Demanda* presentada, sino que nos limitamos a ordenar que estos sean adjudicados a través del proceso administrativo dispuesto para ello por la reglamentación de la UPR.